717 A.2d 883 (1998)
In re Karen S. DAY, Respondent.
A Member of the Bar of the District of Columbia Court of Appeals.
No. 96-BG-1244.
District of Columbia Court of Appeals.
Argued December 2, 1997.
Decided September 10, 1998.
*884 George W. Jones, Washington, DC, for Respondent.
Michael S. Frisch, Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for the Office of Bar Counsel.
Before STEADMAN, RUIZ and REID, Associate Judges.
RUIZ, Associate Judge:
In 1988, the Florida Bar initiated an investigation of Respondent, Karen S. Day, for misappropriation of client trust account funds. Day resigned from the Florida Bar without leave to seek reinstatement before the investigation was completed. Day takes exception to the Report and Recommendation of the Board on Professional Responsibility (the "Board"), which recommends that this court disbar Day from practice in the District of Columbia as reciprocal discipline for conduct that caused her to voluntarily resign from the Florida Bar. Bar Counsel agrees with the Board's recommendation.
Taking exception to the Board's recommendation, Day argues that disbarment is not warranted in this case because at least three of the five exceptions to mandatory *885 reciprocal discipline, under D.C.Bar Rule XI, § 11(c), apply to her case. Specifically, she claims that there is no evidence of any wrongdoing that would have warranted disbarment under the Code of Professional Responsibility in effect in this jurisdiction in 1988. In this regard, Day places great significance on the distinct Florida disciplinary rules that do not require an admission of wrongdoing as a condition of voluntary resignation. We conclude that because Day's resignation from the Florida Bar while a disciplinary proceeding was pending against her constituted "discipline," and none of the exceptions to reciprocal discipline apply to her case, the Rules of the District of Columbia Bar require the imposition of reciprocal discipline. We also conclude that Day's due process rights are not violated by the imposition of reciprocal discipline.

I.
Day was admitted to the Bar of the District of Columbia Court of Appeals, upon examination, on December 18, 1981. In 1982, she moved to Florida to be closer to her family. She was admitted to the Bar of the Supreme Court of Florida, upon examination, on November 29, 1982.
Starting in 1985, Day experienced a number of setbacks and adversity in her personal life.[1] She also began to have problems in her professional life. On March 3, 1988, the Supreme Court of Florida publicly reprimanded Day for professional misconduct because she "notarized numerous affidavits without requiring the affiants to personally appear before her." During this time, while undergoing a number of personal difficulties, Day discovered that money was missing from her client escrow account when checks written on the account were returned for insufficient funds. Her husband admitted to her that he had stolen money from the escrow account. The Florida Bar instituted a disciplinary investigation of the missing funds. According to Day, her husband pressured her not to testify against him. She explains that instead of fighting to "clear her name and save her career," she chose to resign because she "could not endure the ordeal of testifying against the father of my children in formal disciplinary proceedings."
On July 2, 1988, Day filed a Petition for Leave to Resign in the Supreme Court of the State of Florida. The Florida Bar opposed the petition on a number of grounds, including the pending disciplinary investigation for trust account violations and misappropriation, her failure to cooperate with the investigation and because she did not specify a period of resignation.
On September 22, 1988, Day filed an Amended Petition for Leave to Resign pursuant to Florida Bar Rule 3-7.11 with the Supreme Court of Florida seeking leave to resign permanently, without leave to reapply. In her Amended Petition, Day noted her previous public reprimand, and acknowledged the pendency of a Florida disciplinary investigation for failure to properly maintain trust accounts. On November 17, 1988, the Supreme Court of Florida approved Day's amended petition effective December 19, 1988. Since May 1995, Day has established a practice limited to federal immigration matters. Day's limited legal practice is purportedly *886 authorized by her D.C.Bar license as indicated in her business card: "Admitted to Washington, D.C.Bar only, practice limited to Immigration and International Law."
Day failed to report the action of the Florida Supreme Court accepting her permanent resignation to the District of Columbia Bar. This jurisdiction did not learn of Day's resignation in Florida until May 1996, when the Florida Bar authorities brought it to Bar Counsel's attention. Upon being advised of Day's permanent disbarment in Florida, this court entered an order suspending Day from the practice of law in the District of Columbia on November 21, 1996, and directing Bar Counsel to inform the Board of his position regarding reciprocal discipline.[2]

II.
A threshold issue in this case is whether resignation under Rule 3-7.11 of the Florida Bar Rules constitutes "discipline" for the purpose of reciprocal discipline in this jurisdiction. The issue was recently decided by this court in the case of In re Richardson, 692 A.2d 427 (D.C.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1056, 140 L.Ed.2d 118 (1998). There, this court determined that resignation under Rule 3-7.11 was discipline for the purposes of Rule XI, § 11.[3]Id. at 428. Richardson made an identical claim to the one Day presents here, relying on the fact that his resignation was voluntary and that neither the Florida Bar nor the Florida Supreme Court "found him guilty of any misconduct." Id. at 430-31. While recognizing that "when disciplinary proceedings have been initiated, Florida does not require the respondent attorney to admit the charges as a condition of the attorney's resignation from the bar," this court concluded "that the Supreme Court of Florida's acceptance of Richardson's resignation while a disciplinary proceeding was pending against him constituted `discipline' both in Florida and under our Rule XI § 11." Id. at 431. Similarly in this case, the Florida Supreme Court's acceptance of Day's permanent resignation in the face of a pending disciplinary proceeding was "discipline" upon which we may impose reciprocal discipline under Rule XI, § 11.

III. Due Process
Day contends that reciprocal disbarment would violate her right to due process of law because there has been no adjudication of guilt and the uncontested evidence she has presented demonstrates no wrongdoing on her part. Bar Counsel replies that Day received from the Florida disciplinary proceedings all the process she was due there, and that she knowingly waived her right to a hearing. Having done so, she cannot now complain that she is subject to the collateral consequences of her choice.
An attorney has a right to procedural due process in a disciplinary procedure. See In re Ruffalo, 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968); see also In re Richardson, 692 A.2d 427, 433 (1997); In re Colson, 412 A.2d 1160, 1164 (D.C.1979) (en banc). Due process is afforded when the disciplinary proceeding provides adequate notice and a meaningful opportunity to be heard. See Boddie v. Connecticut, 401 U.S. 371, 378-79, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). However, it is well established that an individual can waive any process to which he or she has a right. See D.H. Overmyer Co. v. Frick Co., 405 U.S. 174, 185, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972).
In Richardson, we addressed and rejected a similar challenge to imposition of reciprocal discipline based on the Florida resignation procedure. Richardson argued that application *887 of Rule XI, § 11 violated his constitutional right to due process by allowing reciprocal discipline upon resignation from the Florida bar, without a hearing in D.C., to determine whether he had knowingly and voluntarily waived his right to a hearing in Florida. He also argued that he did not "receive due process in the District of Columbia because his resignation in Florida resulted in cancellation of the evidentiary hearing on the merits of the charges against him...." In re Richardson, supra, 692 A.2d at 434. This court reasoned that
Richardson's loss of an evidentiary hearing in Florida was his own choice; by electing to resign, he waived his right to a hearing where he could have contested the charges. We also agree that, as a consequence of Richardson's Florida waiver, we are entitled to relyfor purposes of final, reciprocal disciplineon the disciplinary result in Florida, properly certified to this court, without affording Richardson the evidentiary hearing on the Florida charges he elected to forego earlier. Put succinctly: If Richardson validly waived an evidentiary hearing in Florida, he is deemed to have waived any evidentiary hearing on the same charges that would otherwise be required by due process before he could be suspended from the practice of law in this jurisdiction.
Id.
The reasoning in Richardson applies with equal force to the case at hand. Day does not contend that she had no notice of the nature of the charges against her in Florida and of the sanction if she elected to resign in lieu of defending the disciplinary proceeding. Day had a choice as to which disciplinary route she would follow. She could have continued with the disciplinary proceeding or she could have allowed the Supreme Court of Florida to consider her initial petition to resign, over the Florida Bar's objection, which could have allowed her to reapply after three years. See The Florida Bar, 428 So.2d 662 (Fla.1983) (per curiam). Instead, Day filed an amended petition agreeing to resign without leave to reapply which allowed her to permanently avoid disciplinary proceedings there. However motivated by her difficulties at the time, Day was aware of her options and made her choice of discipline. In her numerous arguments Day ignores the fact that if there was no hearing and formal adjudication in Florida it is because she voluntarily chose to forego that opportunity. As Day knowingly and voluntarily waived her right to any further process in the Florida proceedings, she consequently waived her right to a hearing thereand hereon the underlying charge of misconduct. See In re Velasquez, 507 A.2d 145, 147 (D.C.1986) (per curiam) (noting that where "another jurisdiction has already afforded the attorney a disciplinary procedure that includes [all due process safeguards],.... [t]here is no need for a de novo repetition of the entire process," and that "there is merit in the idea of granting due deferencefor its sake alone to the opinions and actions of a sister jurisdiction"). To the extent Day distinguishes her situation from Richardson and makes a substantive due process argument because she has proffered evidence of her innocence, D.C.Bar Rule XI, § 11(c) defines her due process rights, which she has exercised in the proceedings before the Board and this court, as explained below.

IV.
Having concluded that disciplinary resignation under the Florida rules is the functional equivalent of discipline, and that there is no due process impediment to the imposition of reciprocal discipline based on Day's Florida resignation, we now turn to the question of whether reciprocal discipline should be imposed on Day pursuant to D.C.App. Rule XI, § 11(c). The Rule provides that when an attorney is disciplined in another jurisdiction, this court must impose reciprocal discipline unless the attorney shows, by clear and convincing evidence, that one of five enumerated exceptions set forth in § 11(c) applies.[4]See In re Garner, 576 *888 A.2d 1356, 1357 (D.C.1990). If the sanction imposed by the initial disciplining court falls within the range of sanctions that might be imposed in an original case in this jurisdiction, identical reciprocal discipline is required. See id. The rule "creates a rebuttable presumption that the discipline will be the same in the District of Columbia as it was in the original disciplining jurisdiction." In re Zilberberg, 612 A.2d 832, 834 (D.C. 1992). In this case, as the Board and Bar Counsel state, reciprocal discipline would be disbarment.[5]
Day contends that at least three of the § 11(c) exceptions to the imposition of reciprocal discipline apply to her case. Specifically, Day argues that we should not impose reciprocal discipline 1) pursuant to § 11(c)(2), because there is an infirmity of proof establishing the misconduct; 2) pursuant to § 11(c)(3), because imposition of reciprocal discipline would result in "grave injustice"; and 3) pursuant to § 11(c)(4), because any misconduct established warrants substantially different discipline in the District of Columbia. All of Day's arguments center on her contention that the "unusual Florida resignation procedure," in which there was no formal adjudication of her guilt, "makes this case fundamentally different from [other reciprocal discipline cases]."
As we already decided in Richardson, Florida's resignation procedure, when undertaken in the face of a disciplinary proceeding, provides a sound basis for reciprocal discipline under Rule XI, § 11. We also held that Rule XI, § 11(c)'s shifting to the attorney the burden to prove an exception to reciprocal discipline by clear and convincing evidence, comports with the Due Process Clause. See In re Richardson, supra, 692 A.2d at 435. There is one respect in which the present case differs from In re Richardson. There, the court expressly found that Richardson would be entitled to a hearing under Rule XI, § 11(c) by making the required showings, but that Richardson declined the opportunity to do so. See In re Richardson, supra, 692 A.2d at 435. In this case, Day expressly avails herself of the opportunity to avoid reciprocal discipline by attempting to make the required showings and requests remand to a Hearing Committee. For the reasons that follow, we conclude that Day's proffered showings are insufficient to meet her burden of proof and to entitle her to a hearing.

§ 11(c)(2)Infirmity of Proof
Day argues that because the Florida resignation procedure did not result in any adjudication of wrongdoing or findings of fact, and did not require any admission of wrongdoing, there is an infirmity of proof establishing the misconduct for which she would be disciplined on a reciprocal basis. This is merely another attack on the imposition of reciprocal discipline based on the Florida resignation procedure, which we have rejected. We further agree with the Board that Day should be estopped from arguing in these proceedings that there was an infirmity of proof that should serve as the basis for avoiding reciprocal discipline here. It was Day's choice to permanently resign from the Florida bar that effectively ended the Florida investigation. As a result, the Florida Bar discarded the files, making investigation of the matter difficult. Furthermore, because Day never reported her resignation in Florida *889 to this jurisdiction as she was required,[6] Bar Counsel did not have the opportunity to investigate her claims in a timely manner and has been severely prejudiced by the delay.
In light of the circumstances of this case, Day may not avoid reciprocal discipline because, as a consequence of the choice she made in Florida, there does not exist proof of record establishing the misconduct with which she was charged. To conclude otherwise would establish a policy hampering enforcement of the rules of professional responsibility. In any event, as further explained below, we are not persuaded that Day's proffered "uncontested evidence" promises to show, by clear and convincing evidence, an infirmity of proof that Day was responsible for her husband's misappropriation of funds from her client escrow account.

§ 11(c)(3)Grave Injustice
Day argues that it would be a "grave injustice" to disbar her in a reciprocal proceeding because 1) she has presented evidence that she is not guilty of the alleged misconduct, and 2) there is a fundamental unfairness to invoking reciprocal discipline procedures in a case like this one, where there has been no prior adjudication of guilt. The latter argument we have already addressed. On the matter of her innocence of the charged misconduct, Day relies on the affidavit of Thomas Bohn, her former husband, to support her argument that because the record demonstrates that she was not guilty of any misconduct, she should not be disbarred. Bohn's affidavit makes two statements relevant to this inquiry: 1) "that during the time [Day] was in private practice, I removed funds from her client trust account without her knowledge, consent or authorization," and 2) "that I encouraged her to resign from the Florida Bar rather than to testify against me in any proceeding which may have resulted from my actions." Day also relies on her own affidavit, in which she avers that she was unaware that Bohn was stealing from her client escrow account and that she did not participate in or benefit from the theft.[7]
We think it is significant that the theft from Day's client escrow account occurred after she was aware of her husband's criminal record and the criminal investigation that led to his perjury conviction. In her affidavit, Day states that she was aware of Bohn's illegal activities well in advance of the misappropriation. She also had firsthand knowledge of the Florida State agency investigation into her husband's business for issuing false affidavits of service. Furthermore, Day herself was under investigation and ultimately disciplined for her involvement in her husband's service of process business, which had forged her name to affidavits of service and misused her notary seal. The Board concluded, and we agree, that in light of all this information, Day was responsible for running her law practice in a manner that protected her office systems, including her client trust account, from her husband's misuse.
We also agree with the Board that Day's and her former husband's affidavits, upon which Day bases her claim of innocence, are insufficient to meet her burden to prove, by clear and convincing evidence, that disbarment would be a "grave injustice." The Board was of the view that the affidavits filed by Day are not "even minimally adequate to demonstrate the existence of this exception." Bohn's affidavit is conclusory and does not contain any factual recitation regarding the exact nature of his actions. Specifically, neither affidavit addresses basic issues such as the amount of funds Bohn removed, the *890 methods he used to effect the theft, and the systems that Day employed to ensure the integrity of her client funds. Despite these deficiencies in her proof noted in the Board report, Day has not proffered to supplement the record to address the Board's concerns. The Board released its report on May 14, 1997, and Day filed her exceptions approximately one month later, and her reply brief six weeks thereafter, giving her at least two opportunities to provide a more detailed proffer.
We are confident that Day's showing is insufficient to warrant a hearing at which she would have to meet her burden of proving, by clear and convincing evidence, that to disbar her would result in a "grave injustice." The two affidavits Day has presented do not provide any detail of the circumstances surrounding the missing trust account funds that would allow the Board to determine whether Day safeguarded her client trust account. The evidence presented simply is not enough to establish her innocence or even to suggest that she acted in a minimally reasonable manner under the circumstances.
Furthermore, under the exception for "grave injustice" we consider also the possible injustice to the important interests served by the attorney discipline system. Day failed to report the action of the Florida Supreme Court to the District of Columbia Bar, which she had a duty to do. See note 6, supra. In her affidavit, Day explains that she did not do so because she was not aware of her obligation to report her voluntary resignation from the Florida Bar to this court. We are unpersuaded by this explanation because the Florida procedures make it clear that the kind of resignation Day undertook is akin to discipline. See note 3, supra. An attorney is held responsible for knowing the rules of the jurisdiction in which she is admitted to practice.
As a result of Day's failure to inform the court of the Florida action, this jurisdiction belatedly learned of her permanent resignation on May 1996. Bar Counsel persuasively contends that this delay caused serious prejudice to his office because it had no opportunity to investigate the matter close to the time when it first arose. Almost ten years later, there is little Bar Counsel can do to investigate this matter. As we have just reviewed, Day, who is in a better position to provide the necessary information to Bar Counsel, the Board and the court, has offered only a sketchy account. Under the circumstances, Day not only has failed to show that disbarment would be a grave injustice to her, but also cannot disclaim that her omissions have impeded the discipline system of this court.

§ 11(c)(4)Substantially Different Discipline
This court undertakes a two-step inquiry in determining whether it is appropriate to apply the "substantially different discipline exception" to the presumptive imposition of reciprocal discipline.
First we determine if the misconduct in question would not have resulted in the same punishment here as it did in the disciplining jurisdiction. Second, where the discipline imposed in this jurisdiction would be different from that of the disciplining court, we must then determine whether the difference is substantial.
In re Garner, supra, 576 A.2d at 1357 (internal citation omitted).
Day argues that the language of D.C.Bar Rule XI, § 11(c)(4) confirms that reciprocal discipline is not appropriate unless a prior determination of wrongdoing, whether based on an admission or on a finding of fact supported by evidence, provides a basis for imposing the same punishment in this jurisdiction. This is the same argument challenging reciprocal discipline based on the Florida resignation procedure, but in a different guise, that we have already rejected.
Before Day opted for disciplinary voluntary resignation in Florida, she was under investigation for misappropriation of funds, conduct that is sanctionable by disbarment in this jurisdiction except in the very limited circumstance of simple negligence. See In re Pierson, 690 A.2d 941, 948 (D.C. 1997); In re Addams, 579 A.2d 190, 191 (D.C.1990). Day's voluntary resignation stopped the investigation by Florida authorities and precluded the development of a record that could have supported her claim of *891 simple negligence. The Board reviewed the record that does exist, including the one that Day has created in this jurisdiction, to determine whether it supported a finding of misappropriation resulting from simple negligence which would justify a lesser sanction than disbarment, but concluded that it did not. We agree. Day admits that client funds were misused but, as mentioned above, she has proffered no evidence that would support a claim that her husband's ability to access her account, particularly when viewed in the context of her knowledge of his illegal activities, was the result of simple negligence on her part. Indeed, Day's affidavit suggests the opposite conclusion, that she did not do what she should have to prevent the theft.[8] Thus, Day's showings are insufficient to entitle her to a hearing at which she would have to prove, by clear and convincing evidence, that her misconduct warranted "substantially different discipline" than disbarment.[9]

* * *
We reciprocally impose the discipline Day chose in Florida, disciplinary resignation, which is the equivalent of disbarment. Because permanent disbarment is not within the range of sanctions in this jurisdiction, Day will be eligible for reinstatement in the future, five years from the date of her disbarment here. See In re White, 605 A.2d 47, 49 (D.C.1992) (per curiam). Accordingly, we adopt the Board's recommendation and order Day disbarred from the practice of law in the District of Columbia nunc pro tunc to December 26, 1996, the date of her filing of the required affidavit under D.C.Bar R. XI, § 14(g), as acknowledged by Bar Counsel at oral argument.
So Ordered.
NOTES
[1] In September of 1985, a state agency accused Day's husband's process server business of submitting fraudulent affidavits of service falsely attesting that documents had been served. At that time, Day for the first time learned of her husband's unsavory past from newspaper stories, which disclosed that he had been convicted in 1963 for tampering with the mail, and had served fourteen months in a federal prison. He also had been convicted of passing forged documents in Fort Lauderdale, Florida, and sentenced to four years' probation in 1974. Day also learned that Thomas Sherman Bohn, as she knew her husband, was not her husband's real name, but that he had fraudulently assumed his present identity.

In October, 1985, Bohn testified in a criminal trial on behalf of a defendant charged and convicted of racketeering, fraud, grand theft, and sale of unregistered securities, a scheme where investors lost about $1.7 million. In December of that year, her husband was charged with perjury in connection with this testimony. At that time, Day was seven months pregnant with her second child, who was born in February 1986, with a heart condition. A year later, in March 1987, her husband was convicted of the perjury charge. In June 1987, her youngest child had to be hospitalized because she developed pneumonia. In June 1988, her husband was sentenced to six months' imprisonment.
[2] On May 29, 1997, this court denied Day's Petition for Rehearing or Rehearing En Banc regarding the interim suspension order.
[3] In 1988, the Florida Rules provided a procedure for an attorney to resign when she is not facing a disciplinary or criminal investigation, Florida Rule 1-3.4, and a procedure allowing an attorney to resign in the face of a disciplinary investigation, Florida Rule 3-7.11. Florida Rule 3-7.11 was amended in 1993; the actual content of the rule was not modified but it was renumbered as 3-7.12 and retitled as "Disciplinary Resignation from the Florida Bar." Rule 3-5.1, which specified the various types of discipline also was amended to include new subsection (j) "Disciplinary Resignation" which refers to the procedure authorized by Rule 3-7.12 and states that an attorney may be allowed to resign in lieu of defending against allegations of disciplinary violations.
[4] D.C.Bar Rule XI, § 11(c) (1997) provides:

Reciprocal discipline shall be imposed unless the attorney demonstrates, by clear and convincing evidence, that:
(1) The procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or
(2) There was such infirmity of proof establishing the misconduct as to give rise to the clear conviction that the Court could not, consistently with its duty, accept as final the conclusion on that subject; or
(3) The imposition of the same discipline by the Court would result in grave injustice; or
(4) The misconduct established warrants substantially different discipline in the District of Columbia; or
(5) The misconduct elsewhere does not constitute misconduct in the District of Columbia.
Unless there is a finding by the Board under (1), (2) or (5) above, that is accepted by the Court, a final determination by a disciplining court outside the District of Columbia or by another court in the District of Columbia that an attorney has been guilty of professional misconduct shall conclusively establish the misconduct for the purpose of a reciprocal disciplinary proceeding in this court.
[5] Bar Counsel notes that permanent disbarment, the option Day chose in Florida, is not within the range of sanctions in this jurisdiction. See In re McBride, 602 A.2d 626, 641 (D.C.1992) (en banc).
[6] Rule XI, § 11(b) (1997) provides in pertinent part that "any attorney subject to the disciplinary jurisdiction of this Court, upon being subjected to professional disciplinary action by a disciplining court outside the District of Columbia ... shall promptly inform Bar Counsel of such action."
[7] The extent of Day's explanation in her affidavit is as follows:

In this same time period, I discovered that money from my client escrow account was missing when checks written on the account were returned for insufficient funds. Bohn admitted to me that he had stolen money from my escrow account. Thomas Bohn's Affidavit is attached hereto as Exhibit D. Until he admitted it, however, I had no idea Bohn was stealing from my client escrow account. I did not participate in any way, and I derived no benefit from Bohn's theft.
[8] In her affidavit, Day states

22. With the benefit of hindsight, as well as eight years of maturity, a divorce from Bohn, a new healthy marriage, and a supportive husband, it is clear to me that, given what I had learned about Bohn's past, I should have assumed that he was perfectly capable of stealing from me and my clients. I am not certain of exactly what I could have done to prevent the theft, but perhaps I could have taken steps to make sure Bohn had no access to my client escrow account checkbook. I deeply regret my failure to do so, and for that I take full responsibility.
[9] In re Evans, 533 A.2d 243, 244 (D.C.1987), cited by Day, is inapposite. In Evans, the court concluded that disbarment would create a "gross disparity between sanctions in this case and other cases in which disbarment has been imposed here." Id. Evans' misconduct consisted of contumacious conduct in federal court leading to disbarment there, which at that time had never been the subject of Bar discipline, but dealt with thorough contempt proceedings. See id. at 244-45. In this case, on the other hand, reciprocal discipline based on misappropriation of client funds is well established and disbarment is the usual sanction.