**In re James A. BIELEC, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 97–BG–1507.**

District of Columbia Court of Appeals.

Argued March 1, 2000.
Decided June 15, 2000.

Kathleen M. Uston, with whom David Ross Rosenfeld, Alexandria, VA, was on the brief, for respondent.

Elizabeth A. Herman, Senior Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Before TERRY, REID and WASHINGTON, Associate Judges.

PER CURIAM:

Respondent James A. Bielec is an attorney admitted to the bars of the Commonwealth of Virginia and the District of Columbia. After he entered into a consent decree with a judge of the United States Bankruptcy Court for the Eastern District of Virginia, voluntarily agreeing to the striking of his name from the roll of attorneys eligible to practice before that court, the Board of Professional Responsibility (Board) recommended that this court not impose any reciprocal discipline, finding that to do so would result in a deprivation of respondent's right to due process of law.

We agree with the Board's recommendation.

### I.

On May 9, 1997, an attorney from the Office of the United States Trustee (U.S.Trustee) filed a complaint in the United States Bankruptcy Court for the Eastern District of Virginia seeking a preliminary and permanent injunction to bar Richard C. Deering, and his agents, from practicing law in any bankruptcy matter before that court. The complaint was filed in response to and with a pending bankruptcy case, *In re Julie K. Owens,* Case No. 97–12084–SSM (Chapter 7), a case being handled by Mr. Deering and allegedly by the respondent. The U.S. Trustee's complaint focused primarily on Mr. Deering, alleging that Deering was not licensed to practice law in Virginia, but maintained a legal practice in Virginia through an entity, Richard C. Deering & Associates. The complaint further stated that Julie K. Owens consulted with Deering in regard to filing for bankruptcy and that a bankruptcy petition was filed in her case on March 21, 1997. Ms. Owens had not viewed her bankruptcy schedules prior to the filing of her petition, and her purported signatures on the schedules, in fact, were made by Mr. Deering. Ms. Owens did not see her schedules until the day before the meeting of creditors. The U.S. Trustee's complaint also averred the following against James A. Bielec: 1) that he signed the bankruptcy fee disclosure form as local counsel for the debtor's attorneys, Richard C. Deering & Associates, and 2) that Ms. Owens never met or saw the respondent. The complaint concluded by alleging that the "defendants' professional conduct is so improper as to constitute an immediate and present danger to the public;" and that "the representation accorded the debtor [Ms. Owens] in this case is consistent with the poor quality of service rendered in bankruptcy cases in which Richard C. Deering is lead counsel."

A hearing on the matter was conducted on May 20, 1997 in the Bankruptcy Court, in which Deering effectively consented to being permanently enjoined from practicing before that court, and a temporary injunction was sought but denied with respect to the respondent. In his opening statement, the U.S. Trustee stated that "Mr. Deering basically wantonly disregarded all the [ethical] rules and we believe [respondent] knew about it or should have known after hundreds of cases what was going on, and he failed to do anything." However, after conceding that he did not have knowledge of any misconduct on the part of the respondent, the U.S. Trustee indicated that he wished to find out "what was going on with their cases."

Bielec had previously filed an affidavit declaring that he did not sign the pleadings in Ms. Owens' bankruptcy case, did not provide any advice or representation to her, did not spend any time on her matter, and did not receive any compensation from her. In addition, Bielec had sent a letter to the Clerk of the Court, dated April 25, 1997, stating that Deering had been using his name in Virginia Bankruptcy cases without his consent and that Bielec had advised the Virginia Board of this information.

On May 29, 1997, Deering was deposed by the U.S. Trustee. Deering's deposition is described as equivocal by the Board. Deering's testimony stated that he signed Bielec's name whenever it appeared in the Owens pleadings, but also explained that Bielec knew that he was signing his name and that this was a long standing practice between the two of them. A final hearing for a permanent injunction with respect to Bielec was scheduled for July 9, 1997.

On July 7, 1997, Bielec entered into a consent decree by which the bankruptcy judge entered an order permanently enjoining him and striking his name from the roll of attorneys admitted to practice before that court. The judge's order explicitly stated that Bielec neither admitted nor denied the allegations in that proceeding

and that the respondent did not waive his right to introduce evidence in response to the allegations in any future proceedings.[1]

On September 10, 1997, Bar Counsel filed a certified copy of the bankruptcy judge's July 7, 1997 order "disbarring" Bielec, and proposed that he be placed on interim suspension. On October 6, 1997, we suspended Bielec until final resolution of the case by this court.

In March of 1998, Bielec filed a motion in the bankruptcy court pursuant to Fed. R.Civ.P. 60(b) and Fed. R. Bankr.P. 9024 seeking to vacate or modify the judge's July 7, 1997 order. He asserted that, contrary to his expectation, the District of Columbia and bars of other courts were using the order to exact reciprocal discipline by treating it as the functional equivalent of an order of disbarment. The judge found that there was nothing ambiguous or unclear about the order and denied the respondent's request. In doing so, the bankruptcy judge articulated that he did not believe it was an order of disbarment and that the bankruptcy court did not have a formal rule on the disbarment of counsel. The judge also expressed that Bielec could apply for readmission immediately and raised a question as to whether the order was limited and only prohibited the respondent from appearing before him and not other bankruptcy judges in the Eastern District of Virginia.

## II.

Bar Counsel filed an exception to the Board's report recommending against reciprocal discipline, primarily relying on the fact that there is a presumption in this jurisdiction that the original discipline imposed by the disciplining court should be imposed here on a reciprocal basis. Bielec and the Board argue that the imposition of reciprocal discipline in this case would violate his due process rights because the U.S. Trustee's complaint fails to charge him with any specific disciplinary violations, and thus, Bielec could not have been on fair notice of the charges and the accompanying consequences in this jurisdiction. In response, Bar Counsel posits that Bielec's consent estops him from making any due process challenge to reciprocal discipline, and that the allegations against Bielec in the U.S. Trustee's complaint, as well as the Trustee's statements in the preliminary injunction hearing, are sufficient to put Bielec on notice of disciplinary violations and, thus satisfy notions of due process. The Board responds that although there may have been factual statements that referenced the respondent, the lack of clear and specific allegations of impropriety that could give rise to charges of disciplinary violations fail to give Bielec

---

1. The entirety of the bankruptcy court's order reads as follows

 THIS MATTER CAME to be heard on defendant James A. Bielec's request that his name be stricken from the rolls of attorneys admitted to practice before the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division, and upon the Complaint of the Office of the United States Trustee seeking a preliminary and permanent injunction against Mr. Bielec from practicing before this court,
 IT APPEARING TO THE COURT that the same is just and proper; and
 IT FURTHER APPEARING TO THE COURT that the parties agree that Mr. Bielec neither admits nor denies allegations set forth in the pleadings herein nor waives his right to introduce evidence in response to said allegations in any future proceedings; it is hereby
 ADJUDGED, ORDERED AND DECREED that the name of JAMES A. BIELEC be and hereby is stricken from the roll of attorneys admitted to practice before this court; and it is further
 ADJUDGED, ORDERED AND DECREED that Mr. Bielec shall be permanently enjoined from the practice of law before this court; and it is further
 ADJUDGED, ORDERED AND DECREED that by the entry of this Order Mr. Bielec neither admits nor denies allegations set forth in the pleadings herein nor waives his right to introduce evidence in response to said allegations in any future proceedings. AND THIS CAUSE IS CONCLUDED as to defendant James A. Bielec.

fair notice, and therefore, the due process exception to reciprocal discipline applies.

■■■ It is true that there is a presumption in this jurisdiction that the original discipline imposed by the disciplining court should be imposed here on a reciprocal basis. *In re Spann*, 711 A.2d 1262, 1263 (D.C.1998); *In re Zilberberg*, 612 A.2d 832, 834 (D.C.1992). The presumption is invoked and identical discipline is required unless there is clear and convincing evidence that an exception to D.C.App. R. XI, § 11(c) applies. *In re Gardner*, 650 A.2d 693, 695 (D.C.1994); *In re Garner*, 576 A.2d 1356, 1357 (D.C.1990) (per curiam). The Board recommended that reciprocal discipline not be imposed in this case, citing three of the exceptions listed in section 11 of Rule XI, (c)(1), (c)(2), and (c)(3). Specifically, the Board articulated that imposing reciprocal discipline would deprive the respondent of his due process rights because he did not have fair notice of the violations for which he might be subject to discipline in this jurisdiction. *See* Rule XI, § 11(c)(1). In addition, the Board argued that there was an infirmity of proof to find Bielec guilty of any misconduct, given Deering's "equivocal" deposition and Deering's disbarment in the District of Columbia for unauthorized use of attorneys' names as local counsel.[2] *See* Rule XI, § 11(c)(2). Finally, the Board suggested that the imposition of reciprocal discipline would constitute a grave injustice.[3] *See* Rule XI, § 11(c)(3).

■■■ We acknowledge that the bankruptcy court is a disciplining court within the meaning of Rule XI, § 11(a), as judges of that tribunal have the authority to suspend or disallow attorneys from appearing before it. Thus, the action of the bankruptcy court in striking Bielec's name from the roster of attorneys eligible to practice before it constituted discipline, and the fact that the court's order originated as part of a civil injunction proceeding rather than a disciplinary proceeding is of no material difference to our analysis. *See In re Spiegelman*, 694 A.2d 59, 60 (D.C.1997). Moreover, the fact that Bielec neither admitted nor denied any allegations of misconduct when he consented to the striking of his name is also insignificant. This court has consistently held that discipline imposed by a court that is voluntarily acquiesced in or not contested by a respondent does not prohibit the imposition of reciprocal discipline in this jurisdiction.

**2.** The Board proceeded to review the record *de novo*, and in doing so concluded that there is an infirmity of proof establishing misconduct on the respondent's part; however, we are not convinced of this point. The respondent cannot complain of an incomplete record, and the lack of evidence of misconduct thereof, once he chooses to stop the proceeding and consent to discipline. *See In re Day*, 717 A.2d at 887. The Board's characterization of Deering's deposition as "equivocal" because at one point Deering stated that he used the respondent's name without authority, and then at another juncture Deering expressed that he commonly used the respondent's name and Bielec was aware of this ongoing practice, does not create an infirmity of proof. Had there been an exhaustive hearing, absent Bielec's consent, then perhaps the evidence in the record would be sufficient for a finding of misconduct on his part. · *Id.* at 889. But that did not happen in this case.

**3.** We reject Bar Counsel's argument that the Board stepped outside of its authority by basing its legal conclusions on arguments that the respondent did not himself present, citing *In re Spann*, 711 A.2d at 1265. In *Spann*, we articulated that this court has "independent authority to impose different discipline if it finds 'on the face of the record ... by clear and convincing evidence' that an exception applies." 711 A.2d at 1263. The decision further expresses that "[p]ursuant to the same authority, the Board can recommend a different sanction where it believes an exception applies." *Id.* (citation omitted). Thus, in *Spann* we held that this court and the Board can, on their own accord, decide whether an exception to the general rule exists in a case where the respondent contests reciprocal discipline. *See id.* at 1263, 1265 (describing the Board's role as "limited" in a reciprocal discipline case unopposed by the attorney); D.C. Bar Rule XI, § 11(f)(2). Moreover, the Board's decision rests almost entirely on the violation of the respondent's due process rights—which was a general argument proffered by the respondent.

See In re Day, 717 A.2d 883, 886 (D.C. 1998) (imposing reciprocal discipline on an attorney who voluntarily resigned from the Florida bar in face of allegations of misconduct); In re Richardson, 692 A.2d 427, 431–36 (D.C.1997) (same). An attorney who knowingly and voluntarily waives his or her right to any further process or a hearing in the originating court consequently waives the right to a hearing in the District of Columbia on the underlying charge of misconduct, even absent formal adjudication of his misconduct. See id.; In re Day, 717 A.2d at 887.

In Richardson, the respondent served as a trustee and attorney for the Jacqueline Overton Trust. The Florida Bar was informed that the respondent had taken excessive fees from the trust, and while this complaint of misconduct was pending, the respondent petitioned to voluntarily resign from the Florida Bar. His petition to resign was granted by the Florida Supreme Court, with leave to seek reinstatement after three years for his misconduct. Bar Counsel notified this court of Richardson's resignation from the Florida Bar and recommended reciprocal discipline. The matter was referred to the Board, which ultimately concluded that Richardson had been disciplined by the Florida Bar for his misconduct, and that reciprocal discipline, a three year suspension, should be imposed. The respondent took exception to the Board's recommendation of reciprocal discipline and his suspension without an evidentiary hearing. In Richardson, we upheld the imposition of reciprocal discipline when an attorney consented to discipline, neither admitting nor denying misconduct in the original disciplining court. We held in Richardson that an attorney cannot make a due process challenge based on his right to a hearing in the District of Columbia when he consented to discipline and voluntarily waived a hearing in the original jurisdiction.

> If Richardson validly waived an evidentiary hearing in Florida, he is deemed to have waived an evidentiary hearing on the same charges that would otherwise be required by due process before he could be suspended from the practice of law in this jurisdiction.

692 A.2d at 434.

■ Thus, Bielec's argument that consenting to discipline without admitting misconduct implicates a due process right to a de novo hearing in the District of Columbia must fail. However, the Richardson decision rests on the premise that the attorney's due process rights were protected in the original proceeding until the point at which the attorney consented to discipline. Importantly, the court in Richardson expressed that if the respondent "validly waived an evidentiary hearing in Florida, he is deemed to have waived an evidentiary hearing on the same charges" in this jurisdiction. See id. (emphasis added). For this reason, the language of this court in Day clarified that Richardson applies uniformly to all cases, unless the respondent can prove that he or she suffered a deprivation of due process in the original disciplining court that requires a de novo hearing in this jurisdiction.

In Day, the respondent discovered that money was missing from her client escrow account, and her husband admitted to her that he had stolen the money from her client account. The Florida Bar instituted an investigation of Day for the misappropriation of client trust accounts. Day filed a Petition for Leave to Resign, which was opposed by the Florida Bar because of "the pending disciplinary investigation for trust account violations and misappropriation, her failure to cooperate with the investigation and because she did not specify a period of resignation." In re Day, 717 A.2d at 885. In response to the Florida Bar's opposition, Day filed an Amended Petition for Leave to Resign, "permanently, without leave to reapply", that was granted by the Supreme Court of Florida. Id. In her Amended Petition, "Day noted her previous public reprimand [relating to improper notarization of affidavits], and acknowledged the pendency of a Florida

disciplinary investigation for failure to properly maintain trust accounts." *Id.*

This court was notified of Day's disbarment and informed the Board. The Board recommended reciprocal discipline for the conduct that caused her to voluntarily resign from the Florida Bar. Day took exception to the Board's recommendation, arguing that there was no evidence of wrongdoing warranting disbarment because the Florida disciplinary rules do not require an admission of misconduct as a condition to voluntary resignation. This court in *Day* concluded, as in *Richardson*, that reciprocal discipline was warranted and that the refusal of a *de novo* hearing in this jurisdiction did not violate due process. However, we also articulated in *Day* that the attorney did "not contend that she had no notice of the nature of the charges against her in Florida and of the sanction if she elected to resign in lieu of defending the disciplinary proceeding." *Id.* at 887.

 Thus, contrary to Bar Counsel's argument, *Richardson*'s holding that an attorney consenting to discipline need not be afforded a *de novo* hearing in this jurisdiction does not preclude an attorney from proving an exception to reciprocal discipline based on clear and convincing evidence that "the procedure elsewhere was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process." Rule XI, § 11(c)(1); *In re Day*, 717 A.2d at 887. In the present case, as distinguished from *Richardson* and *Day*, we simply do not have clear allegations of misconduct that constitute disciplinary violations, and thus, Bielec was not on notice of the nature of the charges against him. In *Richardson*, Richardson served as the trustee and attorney for the Jacqueline Overton Trust, and he was aware that the Florida Bar received a complaint that he had taken excessive fees from the trust. 692 A.2d at 432–34. In *Day*, the attorney was on notice that the Florida Bar initiated an investigation for trust account violations and misappropriation and that the Florida Bar was prepared to bring charges

based on this professional misconduct. 717 A.2d at 885. Similarly, in *In re Sheridan*, 680 A.2d 439, 440 (D.C.1996), a case where we imposed reciprocal discipline on an attorney who surrendered his license to the Virginia bar in face of allegations of misconduct, the attorney was aware of allegations that he had "improperly used confidential information obtained from former clients, harassed former clients with litigation, and pursued discovery through deceitful means."

 As stated above, reciprocal discipline is appropriate unless there is clear and convincing evidence in the record that due process was not afforded in the original court. *See* Rule XI, § 11(c)(1). An attorney is entitled to procedural due process in a disciplinary hearing, which includes fair notice of the charges against him. *See In re Ruffalo*, 390 U.S. 544, 550–51, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). Such notice is necessary to afford the attorney an opportunity to explain or defend against allegations of misconduct. *Id.* In this case, although the respondent consented to his suspension before the bankruptcy court, we are unable to identify any evidence in the record which describes the specific charges against him or the ethical violations that form the basis for his suspension. Bar Counsel maintains that "the allegations of the U.S. Trustee's complaint, without more, sufficed to give Respondent adequate notice that the Trustee was challenging Respondent's association with Deering in the latter's pattern or practice of inadequate legal representation of clients before the bankruptcy court." We hold, however, that such vague and ambiguous language is inadequate to satisfy due process requirements and is no substitute for clear charges of specific disciplinary violations. Not only does the U.S. Trustee's complaint never mention any disciplinary code violation, but it fails to detail any action on the respondent's part that indicates that he engaged in misconduct.

■ The bare statement in the U.S. Trustee's complaint that Bielec's name appeared as local counsel on Ms. Owens' bankruptcy schedules and that he had not met Ms. Owens is not a charge of misconduct, and this statement is substantially different from the allegations offered by Bar Counsel that: 1) the respondent engaged in a "fraudulent scheme perpetrated by Mr. Deering and respondent to obtain funds from desperate, vulnerable bankruptcy clients without properly counseling the clients or providing the agreed services, and then lying to clients about the status of their matters", 2) that this scheme was achieved by the appearance of respondent's name and signature on "hundreds of cases as local counsel for Mr. Deering" and by the forgery of client signatures, and 3) that "respondent filed inaccurate petitions because he nor the clients viewed the representations set forth in the petitions to determine their accuracy." Likewise, the U.S. Trustee's general assertion that Bielec's "professional conduct is so improper as to constitute an immediate and present danger not only to clients but to the public" is also deficient of any actual charges of misconduct. In the same vein, the U.S. Trustee's comment that "Mr. Deering basically wantonly disregarded all the rules, and we believe Mr. Bielec knew about it or should have known after hundreds of cases what was going on, and he failed to do anything" could only suggest that the respondent was on notice of violating every disciplinary rule of the bankruptcy court and the bars of Virginia and the District of Columbia. Indubitably, this vague generalization cannot and does not satisfy due process. Furthermore, it is not enough for Bar Counsel to proffer, after the original hearing,[4] the specific charges against the respondent and what violations of the Bar Rules he may have transgressed.

■ In this case, unlike *Richardson, Day* and *Sheridan*, the allegations in the U.S. Trustee's complaint did not clearly state a specific charge of misconduct against the respondent. Nor did the Trustee's oral allegations in the preliminary injunction hearing detail what the respondent, in fact, did that might constitute misconduct and a disciplinary violation. In short, in order to justify reciprocal discipline based on the respondent's deemed admission of professional misconduct in another jurisdiction, the record must clearly reflect either the conduct that would rise to the level of a disciplinary violation or the specific disciplinary violation which the attorney admitted. Moreover, as a practical matter, without knowledge of what disciplinary violations occurred, it is difficult for this court to discern which ethical canon, if any, the respondent's conduct violates in the District of Columbia and what sanctions we would apply for the same or similar violations in this jurisdiction. *See* Rule XI, § 11(c)(4), (c)(5).

### III.

■ Due process demands more than vague and unspecified conclusions without clear charges of misconduct, and therefore, the U.S. Trustee's complaint does not suffice to put the respondent on fair notice of the ethical violations for which he consequently would face discipline in this jurisdiction. "While the ultimate choice of a sanction rests with this court, our rule requires us to respect the Board's sense of equity in these matters unless that exercise of judgment proves to be unreasonable." *In re Richardson,* 692 A.2d at 436 (citation omitted). We agree with the judgment of the Board that reciprocal dis-

4. Bar Counsel's brief on appeal lists numerous violations of the District of Columbia Bar Rules that could be inferred from the charges alleged against Mr. Deering and the facts noted about the respondent, including conduct that violates Rules 8.4.(c) (dishonesty), 8.4(d) (interference with the administration of justice), 8.3.(a) (failure to report misconduct), 5.5.(b) (assisting unauthorized practice), 1.3(a) (failure to represent client zealously and diligently), and 1.3(b) (intentional failure to seek client's lawful objectives).

cipline is inappropriate in this case because Bielec was not given fair notice of the disciplinary charges against him. *See* Rule XI, § 11(c)(1). For these reasons, we adopt the recommendation of the Board and decline to impose reciprocal discipline.[5]

*So ordered.*

**5.** As the Board has previously announced, the Office of Bar Counsel is free to institute its own investigation of any professional misconduct on the part of the respondent.