In re Charles W. SCHOENEMAN,
Respondent.

No. 99–BG–477.

District of Columbia Court of Appeals.

Argued May 30, 2001.
Decided July 26, 2001.

David N. Webster, Washington, for respondent.

Michael S. Frisch, Senior Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for Bar Counsel.

Before SCHWELB and RUIZ, Associate Judges, and GALLAGHER, Senior Judge.

RUIZ, Associate Judge:

After a complaint was filed with the Virginia State Bar alleging that Charles Schoeneman had neglected a case and failed to keep his client informed of its progress, Schoeneman chose not to contest the allegation, and surrendered his license to practice law in Virginia. Because a resignation in the face of pending charges of misconduct is a form of bar discipline, see *In re Day*, 717 A.2d 883, 888 (D.C. 1998), the Board on Professional Responsibility recommends that Schoeneman be suspended from the District of Columbia Bar as a reciprocal matter, with leave to apply for reinstatement if granted in Virginia, or after five years, whichever occurs first.

Schoeneman contests the Board's recommmendation, contending that (1) the allegations in Brice's complaint would not constitute misconduct in the District of Columbia; (2) the discipline recommended by the Board is substantially greater than warranted by his alleged conduct, even if it were misconduct; (3) imposing discipline where, as here, the respondent previously had been exonerated by D.C. Bar Counsel in its independent investigation would be a "grave injustice"; (4) his resignation in Virginia did not constitute bar discipline that could support reciprocal discipline because formal charges had not been filed; and (5) the Board's failure to grant him an evidentiary hearing violated his right to due process.

We concur with Schoeneman that the allegations in Brice's complaint would not constitute misconduct in the District of Columbia, and reject the recommendation of the Board without reaching his other claims of error.

## FACTS

Barbara Brice hired Charles Schoeneman to reopen a Title VII racial discrimination case against Nations Bank that she had lost because the trial court held that she had forged a memorandum used to support her claim. Schoeneman was hired to prove that the opposing party, and not Brice, had forged the memorandum, allowing her to reopen her claim.

On March 20, 1997, several years after hiring Schoeneman, Brice filed a complaint with the Virginia Bar, alleging that he had failed to return her telephone calls for several weeks or to reopen her case. Her complaint included the following statement of facts and allegations:

When I first met Mr. Schoeneman he was working out of the law firm Koositsky & Assoc. [in Arlington, Virginia]. . . . We visited Va. on four occasions at this location. Mr. Schoeneman reviewed my case and stated for a retainer of $5,000 he would begin to represent me in the case listed. August 5, 1994 the agreement was mailed to me federal express. Mr. Schoeneman was paid $2,500 as stated before August 15, 1994 and $3,000 in Feb. 1995. We communicated by phone and Mr. Schoeneman visited Baltimore on several occasions. He claimed he was working on attempting to reach a settlement with Nation's Bank each and every month we spoke. He also stated that he was working on the complaint to be filed in U.S. District Court if he could not settle. I haven't [illegible] him for the last three weeks. I get nothing but an answering machine. Mr. Schoeneman has taken over $5,000 to investigate and reopen this case.

On April 18, 1997, Virginia Bar Counsel informed Schoeneman of Brice's complaint, and requested an answer within twenty-one days.[1] Schoeneman did not respond, but, on October 2, 1997, surrendered his license to practice law in Virginia.[2]

On December 23, 1997, Brice filed an almost identical complaint with District of Columbia Bar Counsel, alleging that

Schoeneman "refused to file the suit or refund my money." Schoeneman defended himself in the District. On April 13, 1998, he wrote to Bar Counsel, explaining that he hired documents experts, a handwriting expert and a private investigator to pursue Brice's claim, yet could not prove that someone other than Brice had forged the memorandum, and therefore could not reopen the case without violating Federal Rule of Civil Procedure 11. Bar Counsel accepted that explanation, and informed Brice that "Mr. Schoeneman's decision not to file a motion to reinstate [her] civil case reflected his professional judgment. It is beyond the purview of this office to second-guess such decisions."

About a year later, Virginia authorities informed D.C. Bar Counsel of Schoeneman's resignation and provided the following confidential summary of the pending charges:

> In approximately August of 1994, Barbara Brice retained the Respondent to reopen her Title 7 discrimination case which had been filed in U.S. District Court in Baltimore. Ms. Brice paid the Respondent approximately $6,000.00. The Respondent hired a private officer and then did not pay him despite having received the funds to do so.

1. A second complaint was also filed against Schoeneman in an entirely unrelated matter. This second complaint is not before this court, however, because the parties agree that the allegations, if true, would not constitute misconduct within the District of Columbia.

2. In the brief and at oral argument, Bar Counsel argued that Schoeneman did not notify Bar Counsel of his resignation from the Virginia Bar. D.C. Bar R. X, § 11(b) requires attorneys to inform Bar Counsel "upon being subjected to professional disciplinary action by a disciplining court outside the District of Columbia." Schoeneman argues that he was not subjected to disciplinary action in Virgi-

nia, and therefore had no such obligation. This is an issue we do not decide. See *infra* note 4. In any event, we do not give much weight to the fact that Schoeneman did not notify because 1) Bar Counsel did not charge him with violating R. XI, § 11(b), and 2) two months after Schoeneman's resignation in Virginia, Bar Counsel was apprised by Brice's complaint of the same allegations that underlay his resignation in Virginia. Bar Counsel investigated and dismissed the complaint on the merits. *Cf. In re Day,* 717 A.2d at 888–89 (noting prejudice to Bar Counsel's ability to investigate as a result of attorney's failure to notify of resignation).

Barbara Brice also alleges that the Respondent failed to timely work on her case and failed to properly communicate with her.

The Respondent admitted to not maintaining a trust account.

Based on this summary, the Board on Professional Responsibility concluded that Schoeneman had violated D.C. Rules of Professional Conduct 1.3 (neglect), Rule 1.4(a) (failure to communicate), and Rule 1.15(a) (failure to maintain a trust account). It found that, "[h]ad these events occurred in the District of Columbia, Respondent would almost certainly have been suspended for some amount of time," and that, under *In re Brickle*, 521 A.2d 271 (D.C.1987), the appropriate reciprocal discipline for Virginia's license revocation is suspension with leave to apply for reinstatement if granted in Virginia, or after five years, whichever occurs first. *See id.* at 273.[3]

## ANALYSIS

■ The resignation of an attorney in the face of disciplinary charges constitutes "discipline" within the meaning of the D.C. Bar Rules.[4] *See In re Richardson*, 692 A.2d 427, 431 (D.C.1997). This court will impose identical discipline in such circumstances unless it finds, on the face of the record, clear and convincing evidence that one of five enumerated exceptions applies. *See* D.C. Bar R. XI, § 11(f)(2); *In re Spann*, 711 A.2d 1262, 1263 (D.C.1998);

accord *In re Bielec*, 755 A.2d 1018, 1022 n. 3 (D.C.2000) ("In *Spann*, we articulated that this court has 'independent authority to impose different discipline if it finds 'on the face of the record … by clear and convincing evidence' that an exception applies.'"). The fifth of these exceptions provides that discipline will not be imposed where "[t]he misconduct elsewhere does not constitute misconduct in the District of Columbia." D.C. Bar R. XI, § 11(c)(5).

### Due Process Requirements

■ When the Board examined Schoeneman's misconduct, it relied on the informal summary of charges sent as a courtesy by Virginia Bar Counsel, not the complaint presented to Schoeneman in the course of the investigation in Virginia. That was an error of law. According to Schoeneman, he had not seen that informal summary at the time he resigned in Virginia; there is no contrary indication on the record. When an attorney consents to discipline in another jurisdiction, that attorney must have been apprised of the nature of the charges against him to have been afforded due process. *See In re Bielec*, 755 A.2d at 1024 (holding that procedural due process requires "adequate notice and a meaningful opportunity to be heard"); *In re Day*, 717 A.2d at 886 (holding that an attorney has a right to fair notice of the charges against her). It follows that reciprocal discipline based on an attorney's resignation must be based only

---

3. After oral argument, Bar Counsel filed a motion on behalf of the Board to clarify its recommended sanction in light of recent amendments to the Virginia rules which would not permit Schoeneman to apply for reinstatement before five years from his resignation, or to remand to the Board if it would be useful to the court. In light of our disposition, the precise contours of the recommended sanction are irrelevant, and the court denied Bar Counsel's motion.

4. Schoeneman contends that his resignation from the Virginia Bar should not be considered discipline because no formal charges had been filed against him. We need not reach that issue, however, because we find that his alleged actions do not constitute misconduct even if his resignation were considered to be a disciplinary action. We thus assume, without deciding, that Schoeneman was disciplined by the Virginia Bar.

on those allegations of which the attorney had fair notice at the time of resignation. *Cf. In re Bielec*, 755 A.2d at 1024 (holding that vague and ambiguous charges in another jurisdiction cannot form the basis for reciprocal discipline in a manner consistent with due process requirements, even if the attorney consented to that discipline). Schoeneman had no such notice of the charges outlined in the Virginia summary. Therefore, in evaluating whether the misconduct alleged in Virginia also constitutes misconduct in the District of Columbia, we rely exclusively on Brice's complaint.

In this case, the difference between the complaint sent to Schoeneman and Virginia Bar Counsel's summary is substantial. The summary claimed that Schoeneman had failed to place Brice's advance in a trust account.[5] Brice's complaint alleged nothing of the kind. The summary claimed that Schoeneman had failed to "timely work on her case" and "properly" communicate with Brice. Brice's complaint, for reasons set forth below, is insufficient to make a *prima facie* case of neglect or failure to communicate.

*Neglect*

■ Brice's principal claim is that she paid Schoeneman a substantial retainer to investigate and reopen her case, but that he had not opened it. There is no express allegation that Schoeneman neglected the case. Read generously, however, the complaint implies that Schoeneman did not reopen the case because he failed to inves-

tigate it. We understand this to be an allegation of neglect, an "indifference and consistent failure to carry out the obligations which the lawyer has assumed to his client or a conscious disregard for the responsibility owed to the client." *In re Reback*, 487 A.2d 235, 238 (D.C.1985) (quoting ABA Comm. on Ethics and Prof'l Responsibility, Informal Op. 1273 (1973)), *rev'd en banc on other grounds*, 513 A.2d 226 (D.C.1986).

Schoeneman, availing himself of the opportunity to show that the Virginia allegations do not constitute misconduct in this jurisdiction, *see In re Day*, 717 A.2d at 888, produced correspondence demonstrating that he consulted with document experts, a fingerprint expert, and a private officer on Brice's behalf. He points out that D.C. Bar Counsel—the only impartial entity to investigate this matter—found his efforts on Brice's behalf to have been reasonable when considering the complaint Brice filed in D.C. He explains that he did not reopen Brice's case because he could not do so ethically: his investigation revealed that he could not prove that Brice did not forge the memorandum, and thus he did not have a good-faith basis for reopening her claim. Bar Counsel had concurred with this assessment, and written Brice that "Mr. Schoeneman's decision not to file a motion to reinstate [her] civil case reflected his professional judgment . . ." and that it "would have been ethically

---

5. Although the summary from Virginia Bar Counsel indicates that Schoeneman "admitted" to not creating a trust account, implying that he waived his due process rights, *see In re Day*, 717 A.2d at 886 (holding that an individual can waive any process to which he or she has a right), no evidence on the record indicates that Schoeneman knowingly or intentionally relinquished such rights, and thus there is no waiver on the facts presented. *See United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (defining

waiver as the "intentional relinquishment or abandonment of a known right") (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). Because Schoeneman had not been apprised of the allegation that he failed to maintain a trust account in violation of Rule 1.15(a) at the time that his resignation was accepted by the Virginia Bar, it cannot form the basis for reciprocal discipline, and we will not consider it here.

improper for him to file a motion to reopen or to bring a new case on [her] behalf if he concluded that he lacked a good-faith basis to do so."

When Bar Counsel considered Schoeneman's case as a reciprocal matter, however, she did not mention her office's earlier investigation and conclusion and refused Schoeneman's request for an evidentiary hearing. *But see Day,* 717 A.2d at 888 (citing *In re Richardson,* 692 A.2d at 435). Instead, she relied solely on a summary from Virginia Bar authorities, which, as we have noted, is irrelevant. We look, instead, to Brice's complaint which led to Schoeneman's resignation in Virginia. Brice's complaint is based on an inference of neglect from a failure to reopen her case. Schoeneman convincingly dispels that inference by using documentary evidence of his efforts, confirmed by the results of D.C. Bar Counsel's independent investigation. Nothing in the record contradicts or undermines this evidence. In that context, Schoeneman's decision not to file a Rule 60 motion is a matter of professional judgment not to be second guessed by this court. *Cf. In re Karr,* 722 A.2d 16, 19 (D.C.1998) (explaining that this court will not second guess the tactical decisions of trial counsel in deciding whether a decision not to file a motion constitutes neglect). The Board thus erred in finding neglect.

*Failure to Communicate*

■ Brice's second allegation is that Schoeneman failed to return her telephone calls for three weeks, which we regard as an allegation that Schoeneman failed to keep his client reasonably informed.

Rule 1.4 (a) of the D.C. Rules of Professional Conduct requires a lawyer to "keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." The guiding principle for evaluating conduct under this rule is whether the lawyer fulfilled the client's "reasonable ... expectations for information." D.C. Rules of Prof'l Conduct R. 1.4 cmt.; *cf., e.g., In re Karr,* 722 A.2d at 21 (holding that a failure of an attorney to provide a copy of a brief to a client violated Rule 1.4(a)).

Brice admits that she and Schoeneman spoke monthly, that he traveled to Baltimore to meet her, and that she traveled to Virginia to meet him. She also states that he regularly informed her that he was continuing in his efforts to reopen her case and reach a settlement with her party opponents.

■ An attorney need not communicate with a client as often as the client would like, as long as the attorney's conduct was reasonable under the circumstances. *See, e.g., In re Walker,* 293 Or. 297, 647 P.2d 468, 470 (1982) ("Although the [attorney] did not communicate with the client as often as the client believed he should have, the record establishes that he kept client adequately informed of the progress he made with each case."). Schoeneman had been keeping Brice informed of the status of her case over an extended period of time. Given the nature of the matter— a long-term, complex fraud investigation coupled with extended negotiations— monthly conversations are not *prima facie* unreasonable. Nothing in the record points to any events or circumstances that would have required Schoeneman to communicate with Brice during the time that she was trying to reach him, or that she was not adequately informed of his efforts. We thus conclude that Brice's complaint does not allege misconduct in violation of Rule 1.4(a).

We hold that the record evidence is clear and convincing that the allegations in the complaint that formed the basis of Schoeneman's resignation in Virginia do

not constitute misconduct in the District of Columbia. *See* D.C. Bar R. XI, § 11(c)(5). Accordingly, we reject the recommendation of the Board that Schoeneman be suspended.

SCHWELB, Associate Judge, concurring:

I am pleased to join Judge Ruiz' opinion for the court. I think it appropriate, however, to add a few further observations.

In general, when an attorney resigns from the Bar while facing charges of wrongdoing, it is reasonable to draw an unfavorable inference. *See In re Richardson*, 692 A.2d 427, 431 (D.C.1997) (citing D.C. Bar R. XI, § 11). It is important, however, to consider the particular circumstances, for there are cases in which the inference may not logically fit.

In the present instance, the attempted mechanical application of decisions we have rendered in cases in which a lawyer resigned from the Bar of another jurisdiction while a complaint against him or her was pending has been most unfair to Schoeneman and potentially devastating to his career. As I see it, Schoeneman has not been shown to have done anything wrong at all, except possibly committing the uncharged offense, if it was an offense, of failing to report his Virginia resignation.[1] Essentially, the complaint against Schoeneman arose from his refusal to move to reopen a civil rights case in which it appeared that his client had forged a critical document. Schoeneman investigated the allegations industriously, but he could not prove that the client was not responsible for the forgery. The client demanded that her fee be returned, but she had no legal right to such relief.

Schoeneman's decision not to file a motion to reopen a case on grounds which he believed to be spurious was consistent with his ethical obligations, and it provided no basis for any sanction against him. Indeed, the Office of Bar Counsel itself independently concluded that, on the merits, Schoeneman's conduct did not warrant disciplinary action in the District. Under these circumstances, I do not see how resort to reciprocal discipline against Schoeneman has served the universally recognized goal of attorney discipline, namely, the protection of the public.

Schoeneman claims that the imposition of reciprocal discipline—potentially a suspension for five years—would result in a "grave injustice" to him within the meaning of D.C. Bar R. XI, § 11(c)(3). If it were necessary to reach the issue, I would be inclined to agree.

---

1. Bar Counsel claims that Schoeneman was required to report his resignation to Bar Counsel pursuant to the last sentence of D.C. Bar R. XI, § 11(b). This contention presupposes that Schoeneman's resignation amounted to "professional disciplinary action by a disciplinary court outside the District of Columbia." *Id.* Our disposition of this case does not require us to determine whether Schoeneman has actually been subject to Virginia discipline, but it is not obvious to me that Bar Counsel's reading is correct. See the opinion of the court, *ante*, at 261, note 2.