*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-BG-7

IN RE THOMAS FORTUNE FAY, RESPONDENT.

A Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 23929)

On Report and Recommendation
of the Board on Professional Responsibility
(BDN-D139-02)

(Argued October 28, 2014                    Decided March 19, 2015)

*John Vail*, with whom *John W. Karr* was on the brief, for respondent.

*H. Clay Smith*, *III*, Assistant Bar Counsel, with whom *Wallace E. Shipp*, *Jr.*, Bar Counsel, *Jennifer P. Lyman*, Senior Assistant Bar Counsel, and *Jelani C. Lowery*, Senior Staff Attorney, were on the brief, for the Office of Bar Counsel.

Before THOMPSON and MCLEESE, *Associate Judges*, and PRYOR, *Senior Judge*.

PER CURIAM: After an extensive hearing, a Hearing Committee (Committee), concluded that, in the circumstances presented, respondent Thomas Fortune Fay entered into an attorney-client relationship with complainant Charles Carter at the request of a lawyer who was not licensed to practice law in the District of Columbia. The Board on Professional Responsibility (Board) approved

the Committee's findings and conclusions and recommends that respondent receive an informal admonition for violating several Rules of Professional Conduct (Rules) relating to that attorney-client relationship. For the reasons stated in this opinion, we agree.

**I.**

After investigation and review of Mr. Carter's complaint, Bar Counsel, on March 22, 2010, filed allegations of multiple violations of the Rules against respondent. For reasons attributable to both parties, the hearings were delayed until September 14, 2011. After denying a variety of procedural contentions raised by respondent, the Committee made findings of fact and conclusions of law. The Committee found that in 1996, Mr. Carter suffered injuries in an automobile accident in the District of Columbia. Mr. Carter retained attorney Joel Chasnoff to represent him in a personal injury case arising out of the accident. Mr. Chasnoff was admitted to practice law in Maryland and the District, but his bar membership in the District had been suspended for his failure to pay dues. Although the retainer agreement did not authorize any other attorney to represent Mr. Carter, Mr. Chasnoff informed Mr. Carter that he would need to enlist local counsel if the matter proceeded to trial.

Mr. Chasnoff asked respondent to sign his name to and file a complaint in the case because his bar membership in the District was inactive. On June 14, 1999, respondent's paralegal and Mr. Chasnoff's secretary filed the complaint in the Superior Court. The complaint listed respondent and Mr. Chasnoff as attorneys. Because Mr. Chasnoff failed to serve the defendant with the complaint the case was dismissed on September 3, 1999. After receiving notice of the dismissal, respondent filed a motion to reinstate the case and for leave to make substituted service. The motion was denied. A second motion was denied without prejudice. Mr. Chasnoff was subsequently disbarred in both Maryland and the District of Columbia.

The Committee concluded that respondent had entered into an attorney-client relationship with Mr. Carter when he professionally accepted responsibility for Mr. Carter's case by authorizing his signature and use of his bar number on the complaint. Comparing respondent's participation in Mr. Carter's case to that of local counsel in a case in which an attorney has been admitted *pro hac vice*, the Committee concluded that respondent assumed the responsibilities imposed by the Rules. Specifically, the Committee concluded that respondent violated the following Rules: Rule 1.1 (b) ("A lawyer shall serve a client with skill and care commensurate with that generally afforded to clients by other lawyers in similar

matters."), Rule 1.3 (requiring a lawyer to "represent a client zealously and diligently within the bounds of the law" and to "act with reasonable promptness in representing a client"), Rule 1.4 (a) and (b) (requiring a lawyer to "keep a client reasonably informed about the status of a matter" and to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation"), and Rule 1.5 (b) (requiring a lawyer to provide to the client a written fee agreement).[1]

Because of respondent's lack of disciplinary record, his good faith in trusting Mr. Chasnoff to re-activate his bar membership and assume the responsibility of the case, the limited effect of respondent's conduct on Mr. Carter's case, and respondent's reputation and professionalism, the Committee recommended that respondent be sanctioned with an informal admonition.

The Board agreed with the Committee and concluded that, by authorizing the complaint to be filed in Superior Court with his signature and subsequently filing a motion to reinstate the complaint, respondent entered into an attorney-

---

[1] Respondent was charged with violating Rule 1.5 (e)—requiring an attorney to obtain informed consent from his client for a division of fees between lawyers—but the Hearing Committee, and subsequently the Board, concluded that respondent did not violate this rule because Mr. Chasnoff did not divide the fees paid to him by Mr. Carter.

client relationship with Mr. Carter. The Board explained that its conclusion was consistent with *In re Washington*, 489 A.2d 452, 456 (D.C. 1985), which cautioned:

> We say again, in the hopes that our message will reach the ears of the whole Bar, that when an attorney undertakes to act on behalf of another person in a legal matter, no matter how pure or beneficent his original intention may have been, he invokes upon himself the entire structure of the Code of Professional Responsibility and its consequent enforcement through disciplinary proceedings.
>
> The short truth of the matter is that the [C]ode does not, and [cannot], create two tiers of ethical obligations, one for attorneys acting formally and for gain, and another for those who act for other reasons. All attorneys must act in an ethical manner when they act as attorneys regardless of what motivates them to undertake the attorney[-]client relationship.

The Board agreed with the Committee's conclusion that respondent violated Rules 1.1 (b), 1.3, 1.4 (a) and (b), and 1.5 (b), as well as the Committee's recommended sanction. The Board also agreed with the Committee's disposition of respondent's pre-hearing motions.

## II.

## A.

Upon review of a disciplinary proceeding, we "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record," D.C. Bar R. XI, § 9 (h)(1), but review the Board's findings of "ultimate fact" (legal conclusions) *de novo*, *In re J.E.S.*, 670 A.2d 1343, 1344 (D.C. 1996). We "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9 (h)(1). However, attorney discipline and the imposition of sanctions are ultimately "the responsibility and duty of this court." *In re Goffe*, 641 A.2d 458, 464 (D.C. 1994).

## B.

Relying on the premise that he never entered into a representation agreement with the client, respondent has consistently asserted that no attorney-client relationship existed between them. We, therefore, begin our analysis of the question from a broader historic context. Members of the bar who practice law serve a variety of roles and have a range of professional responsibilities. Lawyers

have duties and obligations to their clients, D.C. R. Prof'l Conduct 1, ethical responsibilities to other lawyers, D.C. R. Prof'l Conduct 3.4, and, historically, a fiduciary relationship to the court, by which they are licensed to practice law, *see Ex Parte Garland*, 71 U.S. (4 Wall.) 333, 378 (1866) ("Attorneys and counsellors are not officers of the United States[;] . . . [t]hey are officers of the court, admitted as such by its order . . . ."); *see also* 3 William Blackstone, *Commentaries on the Laws of England* 26 (1769) (explaining that attorneys "are admitted to the execution of their office by the superior courts . . . and are in all points officers of the respective courts in which they are admitted"). The concept of a lawyer as an "officer of the court" dates to medieval England in the thirteenth century, when courts began to regulate the admission of attorneys to the bar and their professional conduct. James A. Cohen, *Lawyer Role, Agency Law, and the Characterization "Officer of the Court"*, 48 Buff. L. Rev. 349, 361 (2000). In the United States, this concept has evolved to reflect that, in addition to duties owed to his clients, an attorney has an obligation to the court. 7 C.J.S. *Attorney & Client* § 3 (2014). By virtue of the court's decision to "invest[] the lawyer with a duty-bound office" and the lawyer's recitation of the oath of admission, the lawyer is bound to the court. Deborah M. Hussey Freedland, *What Is a Lawyer? A Reconstruction of the Lawyer as an Officer of the Court*, 31 St. Louis U. Pub. L. Rev. 425, 435-36, 438 (2012); *see also Theard v. United States*, 354 U.S. 278, 281 (1957); *Garland*, *supra*,

71 U.S. (4 Wall.) at 378 ("From its entry [i.e., the court's order of admission] the parties become officers of the court, and are responsible to it for professional misconduct."). An attorney admitted to the District of Columbia Bar is explicitly given the title "officer of the court" and its accompanying duties. The Rules Governing the District of Columbia Bar explain that

> [t]he license to practice law in the District of Columbia is a continuing proclamation by this court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and as an officer of the Court. It is the duty of every recipient of that privilege at all times and in all conduct, both professional and personal, to conform to the standards imposed upon members of the Bar as conditions for the privilege to practice law.

D.C. Bar R. XI, § 2 (a).

The existence of an attorney-client relationship is not solely dependent on a written agreement, payment of fees, or the rendering of legal advice. *In re Lieber*, 442 A.2d 153, 156 (D.C. 1982). An attorney's "ethical responsibilities exist independently of contractual rights and duties"; consequently, the obligations imposed by the Rules arise "from the establishment of a fiduciary relationship between attorney and client." *In re Ryan*, 670 A.2d 375, 379, 380 (D.C. 1996). Although in perhaps the majority of cases the attorney-client relationship is created

when the client retains the attorney, the relationship may also be created by court appointment. *See, e.g.*, *Lieber*, *supra*, 442 A.2d at 156 (citing *Powell v. Alabama*, 287 U.S. 45, 73 (1932)); *see also* Super. Ct. R. Civ. P. 101 (a)(3) (requiring *pro hac vice* counsel to obtain local counsel who must "at all times be prepared to go forward with the case" and must sign all documents filed with the court and attend all proceedings). For certain, the attorney-client relationship does not rest on the client's view of the matter; rather, we consider the totality of the circumstances to determine whether an attorney-client relationship exists. *Lieber*, *supra*, 442 A.2d at 156.

Here, the Board considered substantial evidence to conclude that respondent formed an attorney-client relationship with Mr. Carter. It is critical that respondent authorized the filing of Mr. Carter's complaint with his signature and bar number and later initiated and filed an additional pleading in which he identified himself as Mr. Carter's attorney. As an officer and fiduciary, respondent represented to the court, through his filings, that an attorney-client relationship existed.[2]

---

[2] *Cf.* Formal Op. No. 2004-165, Cal. State Bar., Standing Comm'n on Prof'l Responsibility, 2004 WL 3079030, at *5 (2004) (finding that the lawyers employed by the Court Appearance Service—a service that provides attorneys on an hourly, contractual basis to "stand in" for a client's retained attorneys in hearings, status conferences, depositions, arbitrations, and other matters— undertake the ethical duties stemming from an attorney-client relationship by

(continued . . .)

Moreover, respondent was aware that he was the only counsel of record in Mr. Carter's case who was licensed to practice law in the District; respondent knew that Mr. Chasnoff's bar membership was inactive. Like local counsel facilitating the practice of an attorney admitted *pro hac vice*, respondent was responsible for Mr. Carter's case in the event that Mr. Chasnoff failed to adequately pursue it. *See* Super. Ct. R. Civ. P. 101 (a)(3) (requiring local counsel to "at all times be prepared to go forward with the case"); *Brookens v. Committee on Unauthorized Practice of Law*, 538 A.2d 1120, 1124 (D.C. 1988) (noting that the *pro hac vice* rule "'is not a device to circumvent bar membership requirements or rules against unauthorized practice'"). By asserting his bar membership to aid Mr. Chasnoff in presenting Mr. Carter's claim, respondent, like local counsel, assumed the ethical responsibilities and duties of Mr. Carter's attorney. *Accord Fla. Bar v. Stein*, 916 So. 2d 774, 776-77 (Fla. 2005) (concluding that an attorney undertook ethical responsibility for a case pursued by a disbarred attorney authorizing the disbarred attorney to sign the pleading using her name and bar number).

_____

(. . . continued)

making an appearance on behalf of the retained attorney's client, regardless of the fact that the client never intended to retain the Service attorney); Ethics Advisory Op. 09-11, S.C. Bar Ethics Advisory Comm., 2009 WL 6850299 (2009) (noting that an attorney may inadvertently create an attorney-client relationship by moving to dismiss on behalf of another attorney's client).

Because respondent entered into an attorney-client relationship with Mr. Carter, he was obliged to exercise all ethical duties arising out of that relationship. We agree with the Board and the Committee that respondent cannot now deny his professional relationship with Mr. Carter, which he earlier represented to the court as existing.

## C.

We also agree with the Board and the Committee that respondent should be informally admonished. Sanctions in attorney disciplinary proceedings must serve the public interest and be imposed to deter future conduct rather than to punish the attorney. *Goffe*, *supra*, 641 A.2d at 464. In determining the appropriate sanction, both the Board and this court consider:

> (1) the seriousness of the conduct at issue; (2) the prejudice, if any, to the client which resulted from the conduct; (3) whether the conduct involved dishonesty and/or misappropriation; (4) the presence or absence of violations of other provisions of the disciplinary rules[;] (5) whether the attorney had a previous disciplinary history; (6) whether or not the attorney acknowledged his or her wrongful conduct; and (7) circumstances in mitigation of the misconduct.

*In re Elgin*, 918 A.2d 362, 376 (D.C. 2007) (alteration in original) (quoting

*In re Thyden*, 877 A.2d 129, 144 (D.C. 2005)).

Here, both the Board and the Committee considered each of these seven factors in fashioning an appropriate sanction and ultimately concluded that the mitigating factors in this case—respondent's lack of disciplinary history and dishonest motive, his intent to aid Mr. Chasnoff, his belief that Mr. Chasnoff would take responsibility for the case, the lack of prejudice to Mr. Carter, and respondent's professional career—warranted only an informal admonition. This sanction is not punitive. Therefore, we conclude that respondent shall be informally admonished.

## III.

Respondent also argues that he was denied due process because of procedural errors in his hearing before the Committee. Respondent alleges four procedural errors that denied him due process: (1) the inability to conduct *voir dire* of the Committee members; (2) the Committee's "gross delay" in adjudicating the charges against him; (3) the inclusion of a non-District resident in the Hearing Committee; and (4) the punitive nature of the sanctions against him.

Because disciplinary proceedings are "quasi-criminal," attorneys subject to discipline are entitled to due process of law. *In re Williams*, 464 A.2d 115, 118-19 (D.C. 1983). However, disciplinary proceedings are *not* criminal proceedings, and "attorneys are not afforded all of the protections which are extended to criminal defendants." *In re Benjamin*, 698 A.2d 434, 439 n.8 (D.C. 1997). The due process requirement is therefore satisfied by adequate notice of the charges and a meaningful opportunity to be heard. *In re Edelstein*, 892 A.2d 1153, 1157 (D.C. 2006) (quoting *In re Day*, 717 A.2d 883, 886 (D.C. 1998)). To be successful on review, respondent must show that the Committee erred and that the error "resulted in substantial prejudice." *Thyden*, *supra*, 877 A.2d at 140.

We discern neither error nor prejudice here. First, attorneys undergoing disciplinary proceedings do not have a general right to *voir dire* of the Committee members. *In re Burton*, 472 A.2d 831, 846-47 (D.C. 1984) (noting the need for a factual basis for challenging a Committee member). Respondent demonstrated no special need for *voir dire* here and the Committee, therefore, committed no error in denying respondent's request. Moreover, respondent failed to demonstrate any prejudice from the Committee's denial of his request. Second, a "mere delay in the disciplinary process generally does not provide a legitimate ground for dismissal of the complaint" because "[t]he public interest in regulating members of the bar

takes precedence over the attorney's interest in having claims speedily resolved." *In re Morrell*, 684 A.2d 361, 368 (D.C. 1996). Consequently, the court will not dismiss a disciplinary proceeding against an attorney solely on speedy trial grounds. *Id.* Rather, to warrant dismissal, respondent must show that "delay in the prosecution of disciplinary charges substantially impaired [his] ability to defend against the charges." *Id.* Respondent does not show prejudice here and is therefore not entitled to reversal. Third, we agree with the Board and reject respondent's argument that the Committee members must be residents of the District, both because respondent waived this argument by failing to raise it to the Committee, *see In re Daniel*, 11 A.3d 291, 297-98 (D.C. 2011), and because the rules governing the composition of the Committee do not require such residency, *see* D.C. Bar R. XI, § 5 (a). Finally, we conclude that the sanction suggested by the Committee and the Board does not violate respondent's right to due process because it is not punitive. An informal admonishment—the most lenient form of public discipline available in the District—is appropriate because, although respondent's case presents several mitigating factors, respondent did violate several rules of professional conduct. Accordingly, we conclude that respondent received adequate process.

**IV.**

We conclude that respondent formed an attorney-client relationship with Mr. Carter. Because respondent failed to zealously pursue Mr. Carter's claim and adequately communicate with Mr. Carter about his case, respondent violated Rules of Professional Conduct 1.1 (b), 1.3, 1.4 (a), 1.4 (b), and 1.5 (b). Accordingly, he shall be informally admonished.

*So ordered.*