*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-BG-293

IN RE ERNEST P. FRANCIS, ESQUIRE,
RESPONDENT.

FILED 4/28/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

A Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 439894)

On Report and Recommendation of the
Board on Professional Responsibility
(BDN-89-13)

(Argued January 20, 2016                    Decided April 28, 2016)

*Ernest P. Francis*, pro se.

*H. Clay Smith*, *III*, Assistant Disciplinary Counsel, with whom *Wallace E. Shipp*, *Jr.*, Disciplinary Counsel, and *Jennifer P. Lyman*, Senior Assistant Disciplinary Counsel, and *Jelani C. Lowery*, Senior Staff Attorney, for the Office of Disciplinary Counsel.

Before BLACKBURNE-RIGSBY and MCLEESE, *Associate Judges*, and KING, *Senior Judge*.

PER CURIAM: Respondent, Ernest P. Francis, a member of the District of Columbia Bar since 1993, appeals the Board on Professional Responsibility's ("the Board") recommendation that, due to Francis' violations of several rules of professional conduct in connection with his representation of Ms. Cenny Norris in

the United States District Court for the District of Columbia, he should be sanctioned by a thirty day suspension, stayed in favor of six months of probation. Francis argues that: 1) in contravention of due process, he was not afforded adequate notice as to the conduct that constituted violations of the rules, 2) the Board erred in finding a violation of the rules on diligence and zeal, 3) the Board erred in finding a violation of the rules with respect to communication with his client, and 4) the Board's recommended sanction is improper. We disagree, and adopt the Board's recommendation.

## I.    Facts

Bar Counsel charged Francis with several violations of the District of Columbia Rules of Professional Conduct ("the Rules") stemming from his representation of Norris in a civil suit in the United States District Court for the District of Columbia in 2009. Francis was charged with intentionally failing to seek the lawful objectives of his client,[1] intentionally prejudicing or damaging his

---

[1] D.C. Rules of Professional Conduct Rule 1.3 (b)(1).

client during the course of representation,[2] failing to keep his client reasonably informed,[3] and failing to explain matters to the extent necessary to permit his client to make informed decisions.[4]

Norris entered into a retainer agreement with Clifford Stewart, an attorney licensed in New Jersey, and Stewart hired Francis to act as local counsel, although there is no written agreement between Francis and Stewart. The agreement provided that Francis would act as local counsel, while Stewart would conduct the substantive work and communication with Norris. In connection with the representation of Norris, Francis understood his role to be limited to reviewing the briefs for compliance with Rule 11 of the Federal Rules of Civil Procedure, and the District Court's local rules prior to filing. Francis, as sole counsel of record in the District Court's electronic filing system, received notice of the filings in Norris' case, and he was responsible for forwarding those filings or orders to Stewart, who was not counsel of record, and did not receive notice otherwise.

---

[2] *Id*. at R. 1.3 (b)(2).

[3] *Id*. at R. 1.4 (a).

[4] *Id*. at R. 1.4 (b).

On December 13, 2010, the defendant in Norris' civil action filed a renewed motion to dismiss. Francis did not forward a copy of that motion to Stewart; however, he contacted Stewart via email approximately one month later on January 12, 2011 to discuss the impending deadline for filing an opposition. Stewart responded that he did not have a copy of the motion to dismiss and that he would need thirty days to respond. On January 14, 2011, Francis filed a motion for extension of time to file the opposition, requesting February 14, 2011 as the new deadline, which the court granted. It was not until January 21, 2011 that Francis provided Stewart with a copy of the motion to dismiss. On February 10, 2011, Stewart asked Francis via email to file another motion for extension of time. Although Francis responded to that email asking Stewart to explain the grounds for the extension request, he did not file a motion for an extension of time prior to the February 14, 2011 deadline. Moreover, Francis still did not file a motion for extension of time to file the opposition even after Stewart forwarded to Francis the grounds to do so on February 26, 2011. On March 31, 2011, Stewart provided a draft opposition to Francis but Francis did not find the opposition suitable for filing due to a problem with citations to the record. Stewart sent Francis a revised opposition on April 11, 2011 but, says Francis, the revised opposition was lacking some exhibits and Francis did not file it. On April 13, 2011, the District Court,

treating the motion as conceded because it was never opposed, entered an order dismissing the case. Ten days after the case was dismissed, Francis notified Stewart of the dismissal. Stewart expressed that he was "nonplussed" by the revelation in the court's order that his opposition had never been filed.

On October 3, 2013, Bar Counsel filed a specification of charges arising from Francis' inaction in Norris' case. Following a hearing, the Hearing Committee found that Francis had indeed committed the offenses charged by Bar Counsel, and as sanction, recommended a Board reprimand. On March 17, 2015, after briefing and argument, the Board of Professional Responsibility issued its Report and Recommendations, adopting the Hearing Committee's findings of fact and conclusions of law but recommending, instead of a reprimand, a thirty-day suspension from the practice of law which was to be stayed in favor of a six-month unsupervised probationary period during which Francis was to complete three Continuing Legal Education credits on legal ethics.

## II.  Alleged errors of the Board

### A.  Due Process

Francis argues that he was not afforded notice that satisfied the due process requirements for alleged violation of the Rules. Francis argues that Bar Counsel's Specification of Charges was not specific enough and failed to properly allege the facts describing the specific conduct that constituted the violations of the various Rules.

"An attorney has a right to procedural due process in a disciplinary procedure. Due process is afforded when the disciplinary proceeding provides adequate notice and a meaningful opportunity to be heard." *In re Day*, 717 A.2d 883, 886 (D.C. 1998) (citations omitted). The District's Rules require that the specification of charges filed by Bar Counsel be "sufficiently clear and specific to inform the attorney of the alleged misconduct." D.C. Bar R. XI, § 8 (c).

The Board found that the charges complied with due process, were adequately straightforward, and "clearly notified [Francis] of the allegations against him." Bd. of Prof. Responsibility Rpt. at 10. We agree. Francis argues that what is missing from the specification of charges are the *facts* that would have provided him notice as to what conduct violated each rule. This argument lacks merit.

Paragraphs 1-17 of the specification set forth facts which relate to the rule violations listed in paragraph 18. Francis seems to assert that Bar Counsel was required to directly note after each of the facts which rule that fact was a violation of (if any). But that is not what is required; the charges must be "sufficiently clear and specific to inform the attorney of the alleged misconduct.[5]" That threshold has been met here where the facts upon which the violations are based are clearly presented in chronological order in paragraphs 1-17 of the specification. We think it implausible that a member of the Bar would be confused as to which facts in the specification, for example, "Respondent did not communicate to Ms. Norris that her case was in danger of being dismissed or what steps she may have undertaken to avoid the dismissal of her case," were being alleged as a basis for showing violations of the Rules. That is especially so in light of the fact that Francis, if he were actually confused about which facts constituted violations, did not ask Bar Counsel for a Bill of Particulars.[6] For these reasons, we are persuaded that there

---

[5] D.C. Bar R. XI, § 8 (c).

[6] Moreover, the court notes that Disciplinary Counsel's letter, dated Oct. 11, 2012, in which Disciplinary Counsel informed Francis that it had concluded its investigation and was issuing Francis an informal admonition, was quite factually detailed. This letter, even prior to the formal specification of charges, afforded Francis notice of the actions that Disciplinary Counsel alleged were violations of

(continued…)

was no violation of due process.

**Duty to adequately communicate and to seek the lawful objectives of a client**

Francis argues that the Board erred in finding that he violated Rules 1.3 (b)(1) and (2), for intentionally failing to seek the lawful objectives of his client and intentionally prejudicing his client, and Rules 1.4 (a) and (b) by failing to keep his client adequately informed and failing to communicate with her.

Francis characterizes the Board's finding that he violated the Rules on diligence and zeal (Rules 1.3 (b)(1) and (2)) as the Board requiring him to "fabricate an excuse for an extension" to avoid violation—which he says was error. This is a gross mischaracterization, and the issue is actually quite plain: Francis did not request an extension to file the opposition to the defendant's motion to dismiss even though he knew that the motion could be treated as conceded and granted if he did not act. He claims he never had an adequate basis for filing such a motion

_____
(…continued)
the Rules.

but the record clearly refutes that claim. On February 10, 2011 Stewart told Francis via email that he would not be able to finish the motion by the deadline. At that point, Francis could have moved for an extension of time based on the fact that he had not yet received the response from Stewart, and would not receive it until after the deadline; this reason is similar to the grounds upon which Francis sought an extension in January.[7] Whether the court would have granted an extension based on Francis having not received a completed opposition from the attorney who was in charge of preparing it is not the question. Francis did nothing when he knew that inaction could cause his client's case to be dismissed.[8] If Francis had filed the motion, even if it had been denied, he would not have violated

---

[7] Francis could have been as detailed as he liked in the motion. For instance, he could have told the court that there had been communication problems with lead counsel, or simply that lead counsel had not yet provided him with an opposition to file. Francis could have told the court that lead counsel's calendar was currently heavy and that an additional thirty days was requested by lead counsel to finish the response. Moreover, Francis never asked opposing counsel to consent to a motion for extension of time; had Francis reached out to opposing counsel and received consent, he could have told the court that the motion was unopposed.

[8] Francis' client's case was ultimately dismissed when the court treated the defendant's motion to dismiss as unopposed and granted the motion. Francis knew that this could happen, and when it did happen, the dismissal most certainly prejudiced and damaged Francis' client and Rule 1.3 (b)(2) was violated.

the rule.[9]

Further, we reject Francis' argument that the Board erred in finding that he violated the rules on client communication. We note that he never communicated with Norris during his representation of her. Instead, Francis insists it was Stewart's duty, not his, to communicate with the client, *see* Rules 1.4 (a) and (b), arguing that communication by local counsel with lead counsel satisfies the client communication requirement. In support of that claim he argues that in cases where there is both local counsel and lead counsel, communications from local counsel to lead counsel satisfy the requirements of client communication because lead counsel, in turn, is tasked with relaying local counsel's messages to the client. However, he cites no authority in support of this proposition. Instead, Francis poses to the court hypotheticals such as: 1) Does local counsel have a duty to duplicate all communications from lead counsel to the client?; and 2) In large firms, where there are multiple attorneys on a single case, must each attorney directly communicate with the client to avoid being in violation of the Rules? But neither of those questions are before us, nor do they have any applicability to this

---

[9] Francis continued to knowingly disregard his client's interest when he still failed to file the motion even after he received it, late, from Stewart.

case. We think it sufficient that here Francis was the only counsel of record—he was the only person receiving notice of filings from the court, and no other attorney possessed that information. In short, Francis had exclusive possession of the information needed by Norris in order for her to make informed decisions about her case, and therefore Francis had the obligation to take steps to keep Norris informed, either by directly informing her or by communicating the information to Stewart to be communicated to Norris. Francis did not take such steps in this case. "[W]here an attorney agrees to act for another person in a legal matter, the attorney undertakes the full burdens of a legal relationship no matter how informal or how unremunerative that relationship may be." *In re Washington*, 489 A.2d 452, 456 (D.C. 1985).

## C. Recommended sanction

Francis' final argument is that the Board's recommended sanction is improper in light of this court's decision in *In re Fay*, 111 A.3d 1025 (D.C. 2015) and because New Jersey counsel (Stewart) only received an admonition from the New Jersey Supreme Court. "A sanction recommended by the Board on Professional Responsibility comes to us with a strong presumption in favor of its

imposition." *In re Austin*, 858 A.2d 969, 975 (D.C. 2004) (citing *In re Hutchinson*, 534 A.2d 919, 924 (D.C. 1987)). This court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9 (h)(1).

First, Francis argues that his sanction is improper in light of Stewart's lesser sanction in New Jersey. Francis cites to the D.C. Bar's rule on reciprocal discipline, which provides a presumption that one will be punished in the same way he was punished by another jurisdiction for the same conduct, unless he can rebut the presumption by making showings of deficiency of the process in the other jurisdiction, a grave injustice, or that the misconduct punished elsewhere is not a violation of the Rules in the District. Francis' reliance on the reciprocal discipline doctrine in these circumstances is misplaced. Here, we are not faced with Francis' punishment in New Jersey, as would be the case when applying the reciprocal discipline principals. Instead, we are considering the punishment of another attorney altogether—Stewart's punishment—in New Jersey. There is no reason that this court should give deference to the punishment of another attorney, in another jurisdiction, to the punishment it imposes on a member of the D.C. Bar and

Francis has cited no authority that would require us to do so.

Second, Francis argues that because the respondent in *Fay* only received an informal admonition, so too should he. But *Fay* is distinguishable from the facts before us because: 1) Fay did not intentionally damage his client, and 2) Fay worked to remedy the dismissal of his client's case by filing motions to reinstate. *See Fay*, 111 A.3d at 1027-28. Here, Francis knew that his inaction could lead to the dismissal of his client's case, and he failed to take any action to forestall that result. Moreover, after Norris' case was dismissed, the client, not Francis, worked to get her case reinstated by filing a motion pro se. Francis' conduct was far more egregious than Fay's; and being satisfied that a more severe sanction is warranted, we accordingly adopt the Board's recommendation.

## Conclusion

Accordingly, we adopt the Board's recommendation and hereby suspend Francis from the practice of law in the District of Columbia for thirty days. We suspend that sanction in favor of a six-month probationary period during which Francis must complete three credit hours of Continuing Legal Education on legal

ethics.

*So ordered.*