*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-BG-34

IN RE MICHAEL M. WILSON, RESPONDENT.

A Member of the Bar of the District of Columbia
(Bar Registration No. 941674)

On Report and Recommendation
of the Board on Professional Responsibility
(15-BD-64)

(Argued February 27, 2020                    Decided April 23, 2020)

*Ezra B. Marcus*, with whom *Mark W. Foster* was on the brief, for respondent.

*Hamilton P. Fox, III*, Disciplinary Counsel, with whom *Jennifer P. Lyman*, Senior Assistant Disciplinary Counsel, was on the brief, for petitioner.

Before BECKWITH and MCLEESE, *Associate Judges*, and WASHINGTON, *Senior Judge*.

PER CURIAM: The Board on Professional Responsibility determined that respondent Michael A. Wilson, who is both an attorney and a medical doctor, violated several of the District of Columbia Rules of Professional Conduct. The Board has recommended that Dr. Wilson be suspended for thirty days. Before this court, Dr. Wilson does not contest the finding that he violated the Rules. Rather, Dr.

Wilson argues only that the recommended thirty-day suspension should be stayed in favor of probation. We accept the Board's recommended sanction.

**I.**

In brief, the Board summarized the pertinent facts as follows. We understand those facts to be undisputed for current purposes.

In May 2012, Cynthia Coleman-Fields died intestate after surgery. Dr. Wilson agreed to represent Ms. Coleman-Fields's husband Robert Fields, three of Ms. Coleman-Fields's children, and Ms. Coleman-Fields's estate, in connection with a possible wrongful-death suit. Dr. Wilson did not explain to the family members any potential conflicts of interest that might arise from this joint representation. Mr. Fields initially indicated that he wished to divide the proceeds of any lawsuit evenly with each of Ms. Coleman-Fields's children, and he asked Dr. Wilson to draft a distribution agreement to that effect. Dr. Wilson was reluctant to draft such an agreement, because he lacked the necessary expertise and because Mr. Fields would receive less than the fifty-percent share to which he would otherwise have been entitled. Nevertheless, Dr. Wilson prepared a handwritten document stating that the

proceeds would be divided as Mr. Fields had directed. Only Mr. Fields signed the document.

A different attorney handled the probate of the estate. That attorney advised Dr. Wilson and Mr. Fields that the handwritten document was not binding, and Mr. Fields later decided that he wanted to receive his full fifty-percent share. Dr. Wilson did not communicate those developments to Ms. Coleman-Fields's children.

Eventually, the relationship between Mr. Fields and Ms. Coleman-Fields's children broke down, and Mr. Fields directed Dr. Wilson not to talk to one of Ms. Coleman-Fields's children about the matter. Dr. Wilson complied with that direction, but made no effort to withdraw from his representation of Ms. Coleman-Fields's children.

In November 2012, Dr. Wilson filed a wrongful-death action without advising Ms. Coleman-Fields's children. The children were later advised about some developments in the case, but Mr. Fields unilaterally decided to settle the case. Dr. Wilson handled the wrongful-death case skillfully and obtained a reasonable settlement.

After the settlement, Ms. Coleman-Fields's children learned that, despite the handwritten document, Dr. Wilson intended to pay half of the settlement proceeds to Mr. Fields and to divide the other half among the children. After one of Ms. Coleman-Fields's children objected, Dr. Wilson for the first time explained that the handwritten document was not binding. A dispute arose, and Dr. Wilson negotiated a settlement under which Mr. Fields received 37.5% of the proceeds and the children evenly divided the remaining 62.5%.

Before the Hearing Committee, Dr. Wilson denied that he had committed the charged violations. In addition, Dr. Wilson testified before the Hearing Committee that he had intentionally drafted an invalid distribution agreement and that he had told his clients that the agreement was not valid. In a finding upheld by the Board, the Hearing Committee found that testimony to be intentionally false.

The Board concluded that Dr. Wilson drafted an invalid distribution agreement, in violation of Rule 1.1(a) (duty to provide competent representation); failed to consult with Ms. Coleman-Fields's children about settlement or obtain their consent before settling the wrongful-death case, in violation of Rule 1.2(a) (duty to consult with client); failed to communicate with his clients, in violation of Rule 1.4; and engaged in a conflicting representation of Mr. Fields and Ms. Coleman-Fields's

children without obtaining informed consent from all clients, in violation of Rule 1.7.

As previously noted, the Board has recommended a thirty-day suspension. To protect the interests of Dr. Wilson's clients, the Board recommended that the suspension begin on a date selected by Dr. Wilson that is within ninety days of the issuance of this court's opinion, provided that Dr. Wilson has by that date filed the affidavit required by D.C. Bar R. XI, § 14(g).

## II.

"Sanctions in attorney disciplinary proceedings must serve the public interest and be imposed to deter future conduct rather than to punish the attorney." *In re Fay*, 111 A.3d 1025, 1031 (D.C. 2015) (per curiam).

> In determining the appropriate sanction, both the Board and this court consider: (1) the seriousness of the conduct at issue; (2) the prejudice, if any, to the client which resulted from the conduct; (3) whether the conduct involved dishonesty and/or misappropriation; (4) the presence or absence of violations of other provisions of the disciplinary rules; (5) whether the attorney had a previous disciplinary history; (6) whether or not the attorney acknowledged his or her wrongful conduct; and (7) circumstances in mitigation of the misconduct.

*Id.* (brackets and internal quotation marks omitted). "We 'adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.'" *Id.* at 1029 (quoting D.C. Bar R. XI, § 9(h)(1)). "We apply a strong presumption in favor of adopting the Board's sanction recommendation as long as it falls within the wide range of acceptable outcomes." *In re Robinson*, No. 18-BG-340, 2020 WL 827906, at *3 (D.C. Feb. 20, 2020) (internal quotation marks omitted). Although we thus "give considerable deference to the Board's recommended sanction, ultimately the choice of sanction is for the court to decide." *In re Schwartz*, 221 A.3d 925, 928 (D.C. 2019) (per curiam).

## A.

The Board adopted the Hearing Committee's analysis of the factors relating to sanction. In sum, the Board concluded that Dr. Wilson's Rule violations were serious; that the violations prejudiced his clients; that Dr. Wilson's underlying conduct did not reflect dishonesty; that Dr. Wilson violated multiple Rules; that Dr. Wilson had received an informal admonition over twenty years earlier but had no other disciplinary history; that, at the time of the Hearing Committee's report, Dr. Wilson had not fully acknowledged his wrongful conduct; that Dr. Wilson had

generally handled the wrongful-death matter skillfully; and that there were no other mitigating circumstances.

The Hearing Committee recommended a thirty-day suspension, stayed in favor of one year of probation. The Board agreed with the recommended suspension, but disagreed that the suspension should be stayed. The Board emphasized that Dr. Wilson's dishonest testimony before the Hearing Committee was a "significant aggravating factor." In explaining that conclusion, the Board relied upon this court's decisions in *In re Cleaver-Bascombe*, 892 A.2d 396, 412 (D.C. 2006) ("[A]n attorney who presents false testimony during disciplinary proceedings clearly does not appreciate the impropriety of his or her conduct.") (brackets and internal quotation marks omitted), and *In re Chapman*, 962 A.2d 922, 925 (D.C. 2009) (per curiam) ("Deliberately dishonest testimony receives great weight in sanctioning determinations because a respondent's truthfulness or mendacity while testifying on his [or her] own behalf, almost without exception, is probative of his attitudes toward society and prospects of rehabilitation . . . .") (internal quotation marks omitted).

**B.**

Dr. Wilson first argues that the Board inappropriately adopted a categorical rule that a stay of suspension is never available to a respondent who intentionally testifies falsely during disciplinary proceedings. We do not view the Board as having adopted such a categorical rule. To the contrary, the Board never explicitly stated that it was adopting a categorical rule, instead correctly describing the giving of intentionally false testimony to a hearing committee as "a significant aggravating factor."

**C.**

Dr. Wilson also argues that, given all of the circumstances of this case, the Board's recommended discipline is inconsistent with prior decisions of this court and is unfairly harsh. We disagree.

In arguing that the recommended discipline is inconsistent with prior decisions of this court, Dr. Wilson relies primarily on *In re Clennon*, 182 A.3d 121 (D.C. 2018) (per curiam) (adopting recommendation of sixty-day suspension stayed in favor of probation), and *In re Spaulding*, 635 A.2d 343 (D.C. 1993) (per curiam)

(adopting recommendation of thirty-day suspension stayed in favor of probation). In neither of those cases, however, was the question of sanction contested in this court. *In re Clennon*, 182 A.3d at 122; *In re Spaulding*, 635 A.2d at 344. In such circumstances, "our deferential standard of review becomes even more deferential." *In re Clennon*, 182 A.3d at 122 (internal quotation marks omitted). Moreover, neither of those cases involved false testimony under oath to a hearing committee, which as we have said is appropriately viewed as a significant aggravating factor. *In re Clennon*, 182 A.3d at 122; *In re Spaulding*, 635 A.2d at 344.

Dr. Wilson also cites to several negotiated discipline cases. As he acknowledges, however, in general "an opinion imposing negotiated discipline may not be cited as precedent in contested disciplinary proceedings." D.C. Bar R. XI, § 12.1(d).

Finally, Dr. Wilson, who is a solo practitioner, raises concerns about the impact of a suspension on his clients. We conclude that the Board's recommended sanction adequately addresses such concerns, by permitting Dr. Wilson some flexibility with respect to the timing of the suspension. *See, e.g.*, *In re Avery*, 189 A.3d 715, 721 (D.C. 2018) (per curiam) ("[W]e are satisfied that the interests of the public, as well as fairness to the respondent, will best be accommodated if we allow

respondent to begin his thirty-day suspension at any time within ninety days of our suspension order, provided that respondent's clients and the attorneys for adverse parties are informed of his impending suspension.") (brackets and internal quotation marks omitted).

In sum, we conclude that the Board's recommended sanction is not outside the "wide range of acceptable outcomes." *In re Robinson*, 2020 WL 827906, at *3 (internal quotation marks omitted). *See generally, e.g.*, *In re Robbins*, 192 A.3d 558, 567 (D.C. 2018) (per curiam) ("We have on numerous occasions imposed suspensions of sixty days and longer for conflict-of-interest rule violations.").

For the foregoing reasons, we adopt the recommendation of the Board and order that Dr. Wilson be suspended from the practice of law in the District of Columbia for a period of thirty days, with the suspension to begin on a date selected by Dr. Wilson that is within ninety days of the issuance of this opinion, provided that Dr. Wilson has by that date filed the affidavit required by D.C. Bar R. XI, § 14(g).

*So ordered.*