*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-BG-476

IN RE SAMUEL BAILEY, JR., RESPONDENT.

A Member of the Bar
of the District of Columbia Court of Appeals
(Bar Registration No. 384974)

On Report and Recommendation
of the Board on Professional Responsibility
(DDN 2015-D144; BDN 18-BD-054)

(Submitted April 14, 2022                                        Decided October 13, 2022)

*Myles V. Lynk*, Senior Assistant Disciplinary Counsel, and *Hamilton P. Fox, III*, Disciplinary Counsel, were on the brief for petitioner.

*Johnny M. Howard* was on the brief for respondent.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and EASTERLY and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*: The Board on Professional Responsibility recommends that we suspend respondent Samuel Bailey, Jr., from the practice of law for one year, based on ethical violations stemming from his representation of Allen Laster. Specifically, the Board found that Bailey violated Rules 1.4(a), 1.4(b), 1.5(a), 1.5(e), and 8.4(c) of the District of Columbia Rules of Professional Conduct.

Bailey takes exception to each purported violation. Disciplinary Counsel, on the other hand, takes exception to the Board's rejection of the Ad Hoc Hearing Committee's findings that Bailey also violated Rules 1.1(a), 1.1(b), and 8.4(d), and to the Board's conclusion that Bailey should not be obligated to prove his fitness to practice law before being reinstated.

We agree with the Board that the evidence established that Bailey violated Rules 1.4(a), 1.4(b), 1.5(a), 1.5(e), and 8.4(c), but did not sufficiently establish that he violated Rules 1.1(a) and 1.1(b). As for Rule 8.4(d), we disagree with the Board and agree with the Hearing Committee that the evidence established that Bailey violated that rule, leading us to depart from the Board's recommended sanction and impose a fitness requirement upon any application for reinstatement. We suspend Bailey for one year, with reinstatement conditioned on proof of his fitness to resume legal practice.

**I.**

Allen Laster filed a pro se suit against his Local Union 491, the Labor Management Training Committee, the Mid-Atlantic Council of Carpenters, and the Carpenters Local 491 Annuity Fund, in the United States District Court for the District of Columbia. He alleged that those defendants had engaged in employment

discrimination against him. The defendants filed a motion to dismiss, and Laster approached Bailey in search of representation. Laster and Bailey discussed the lawsuit and a related complaint that Laster had lodged with the District of Columbia Office of Human Rights ("OHR"). Because Bailey did not have the expertise to handle Laster's case, Bailey explained that he could enlist Clifford Stewart, a New Jersey attorney with relevant experience, with Bailey serving as local co-counsel. A few days later, Bailey contacted Stewart, and the two of them began working on the case by September 11, 2013.

It was not until three months later, in December 2013, that Bailey sent Laster a representation agreement, setting forth the scope of work that he and Stewart would perform, along with their attendant fees. Laster testified that he did not understand the agreement, but signed it after Bailey assured him that he would explain the agreement's terms at a later meeting. That discussion never took place.

The agreement that Bailey sent Laster: (1) pertained only to the federal litigation, and made no mention of the OHR proceeding; (2) failed to mention the Annuity Fund defendant; and (3) purported to be a "partial contingent fee contract," but was cryptic in the particulars of how that fee would be calculated. While the agreement explained that counsel would take 40% of Laster's recovery "after

deduction of costs" as compensation, it also referenced a $30,000 initial fee, purportedly for anticipated "costs and expenses," owed in 30 monthly $1,000 installments. The agreement mentioned at least three different hourly rates that Bailey charges, but explained that "[t]he above costs and expenses are not hourly fees but are a reflection of fees in that they represent Counsel's discounted hourly rate of $400.00 per hour." In addition to this murkiness, the agreement contained contradictory information as to when payments would be due and considered late. Even though the agreement made clear that Stewart would be involved in the litigation of the case, it did not delineate the division of responsibility between the two attorneys, but instead ambiguously reassured Laster that "[i]f associated counsel is retained no additional costs will be required of Client." The agreement also contained a provision stating that if Bailey were "discharge[d] . . . for any reason other than just cause," Bailey would be entitled to "an amount equal to the greater of: (1) the above agreed percentage or [sic] gross recovery or $500 per hour for services performed to date of discharge."

Over the course of the representation, Laster paid Bailey at least $12,300. Nonetheless, Bailey failed to provide Laster with receipts for his payments, even upon request. When Laster eventually fired Bailey, Bailey produced an invoice, charging Laster $85,270 for 221.75 hours of work. According to Disciplinary

Counsel's forensic account expert, Kevin O'Connell, that sum included charges for work performed after Laster fired Bailey (in violation of the fee agreement), double billing for meetings where both attorneys were in attendance (at fluctuating rates), and numerous errors and over-charges. O'Connell opined that, in total, Bailey and Stewart overcharged Laster by $23,518.17. At least $12,618.17 of these overcharges were attributable to Bailey and $10,900 to Stewart. Laster disputed the invoice with the District of Columbia Attorney/Client Arbitration Board, which concluded that on balance, Laster owed Bailey $16,500 (approximately $55,500 less than Bailey asserted was still outstanding).

With regard to the representation itself, Bailey entered his appearance in federal court on Laster's behalf in December 2013 and, shortly thereafter, filed a third amended complaint on his behalf. The third amended complaint contained several errors and Mark Hanna, Disciplinary Counsel's expert witness on the standard of care, opined that the quality of the filing suggested counsel neither properly grasped Laster's case nor provided sufficient analysis. According to Hanna, the work "was more similar to that of a pro se plaintiff than a represented client." The Hearing Committee conducted an independent review of the materials submitted and agreed.

The third amended complaint also did not include the Carpenters Local No. 491 Annuity Fund as a named defendant, even though Laster had included it in his initial pro se complaints. After Bailey failed to respond to a motion to dismiss from the Annuity Fund, the action against it was dismissed as conceded.

The three remaining defendants filed a motion to dismiss in July 2014. Bailey did not file an opposition on behalf of Laster until three days after it was due, and failed to file a motion for an extension of time. That opposition contained some fairly basic errors, including an underscore where a date needed to be added, but never was.

Following a mediation session, Bailey and Stewart encouraged Laster to accept a $50,000 or $60,000 settlement offer, which Laster rejected. Several months later, Laster fired Bailey, and Bailey withdrew from the case. The court then appointed pro bono counsel to represent Laster in another mediation attempt, which was ultimately successful, and yielded a sum significantly higher than the settlement Bailey and Stewart had recommended he accept.

Although not included in the fee agreement, Bailey agreed to file a request for reconsideration on the claim that Laster had filed pro se with OHR. Stewart performed the substantive work, and Bailey transmitted the reconsideration request

in April 2014. Bailey inquired about the status of the matter with OHR once, and was told the request for reconsideration was still under review, but there is no evidence that Bailey ever contacted OHR about the matter again. Laster attempted to contact Bailey on multiple occasions about the outcome in the OHR proceeding, but felt his communications were not responded to "in a responsible way," so he sought and retained another attorney to handle his OHR claim.

Laster filed a disciplinary complaint in May 2015, and Disciplinary Counsel subsequently subpoenaed Bailey's client files and "all documents relating to Allen Laster." Bailey retained counsel, who responded to the subpoena with a flash drive containing assorted documents. After reviewing the submission, Disciplinary Counsel sent a follow-up letter two years later highlighting particular omissions from the materials and asking that Bailey either provide them or point Disciplinary Counsel to records that it may have overlooked. Neither he nor his counsel provided the additional documents until he filed his pre-hearing exhibit submissions years later, in February 2019, and he again filed more previously undisclosed exhibits on the last day of the hearing. At the hearing, Bailey offered conflicting testimony on whether he was aware that he had been subpoenaed regarding his representation of Laster, and maintained he had never seen the subpoena, nor was he aware of its scope. He acknowledged, however, seeing Disciplinary Counsel's follow-up letter

indicating that it was still seeking documents that were not provided in his counsel's initial disclosures.

Disciplinary Counsel charged Bailey with violations of Rules 1.1(a), 1.1(b), 1.4(a), 1.4(b), 1.5(a), 1.5(e), 8.4(c), and 8.4(d). The Ad Hoc Hearing Committee found that Disciplinary Counsel supported all of those charges by clear and convincing evidence. The Board on Professional Responsibility, however, disagreed with regard to Rules 1.1(a), 1.1(b), and 8.4(d), though it agreed with the Hearing Committee that Bailey committed the other five Rule violations. The Board ultimately recommended that Bailey be suspended from the practice of law in the District of Columbia for one year.

## II.

In considering the Board's Report and Recommendation, we shall "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." *In re Yelverton*, 105 A.3d 413, 420 (D.C. 2014) (quoting D.C. Bar R. XI, § 9(h)(1)). But in considering the Board's

"findings of ultimate fact or conclusions of law, we owe them no deference; our review is de novo." *Id.* (quoting *In re Cater*, 887 A.2d 1, 12 (D.C. 2005)).

Because Bailey's sanction does not turn on only one or two violations, but a mosaic of misconduct, we address each of the charges against him.

## A. Rule 1.1(a) and 1.1(b)

We agree with the Board that the evidence did not establish that Bailey violated Rule 1.1(a) or 1.1(b). Rule 1.1 provides:

(a) A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

(b) A lawyer shall serve a client with skill and care commensurate with that generally afforded to clients by other lawyers in similar matters.

We have interpreted Rule 1.1 to apply only to failures of attorney performance that rise to the level of "serious deficiency" and involve "conduct that is truly incompetent, fraudulent, or negligent and that prejudices or could have prejudiced

the client." *In re Yelverton*, 105 A.3d at 422. Merely careless conduct, however, is insufficient to support a Rule 1.1 violation. *See In re Ford*, 797 A.2d 1231, 1231 (D.C. 2002). Disciplinary Counsel need not show actual prejudice, but only that the attorney engaged in conduct that could have prejudiced the client if other forces had not intervened. *In re Speights*, 173 A.3d 96, 101 (D.C. 2017) ("[P]rejudice to the client . . . is not an element of . . . D.C. Rule[] of Professional Conduct 1.1.").

Here, the Hearing Committee found that Bailey and his co-counsel Stewart's work was replete with substantive deficiencies such that Bailey had violated Rule 1.1.[1] Although the Hearing Committee cited a variety of shortcomings, spanning "[f]rom the [Representation] Agreement to the final invoice," it focused on the quality of the third amended complaint and opposition to the motion to dismiss that Bailey filed on behalf of Laster. The third amended complaint cited to the wrong statutory provision and contained numerous legal errors, which, in the view of Disciplinary Counsel's expert on the standard of care, Hanna, could have led the

---

[1] We note that Bailey's ethical obligations to Laster are not altered by his association of Stewart as co-counsel. *See In re Fay*, 111 A.3d 1025, 1030 (D.C. 2015) ("By asserting his bar membership to aid [co-counsel] in presenting [the client's] claim, respondent, like local counsel, assumed the ethical responsibilities and duties of [the client's] attorney.").

court to dismiss the suit at any time.[2] The opposition to the motion to dismiss also contained blank spaces where relevant dates ought to have been inserted.

The Board, however, disagreed that Bailey's work fell below the level of professional competence. In the Board's view, the materials submitted by Bailey and Stewart "were not so facially deficient or 'truly incompetent, fraudulent, or negligent' that they prejudiced or could have prejudiced Mr. Laster." After reviewing the relevant filings, we agree. Disciplinary Counsel does not point us to the sort of error that strikes us as so "seriously deficient" that it amounts to a violation of the Rules of Professional Conduct.

Not only did the Board feel that Bailey and Stewart's filings were not "seriously deficient," it took issue with the lack of specificity in expert Hanna's articulation of the standard of care incumbent upon an attorney under Rule 1.1. We share that concern. Bailey's filings in this matter were "not 'so obviously lacking' that expert testimony [was] not needed to show what other lawyers generally would do." And instead of opining as to a specific standard of care, Hanna merely offered

---

[2] Bailey has maintained throughout the proceedings that Hanna should have been struck as an expert witness for a variety of reasons. Because we do not ultimately rely on Hanna's testimony in fashioning our sanction, we do not resolve Bailey's arguments on the issue.

problematically conclusory opinions that Bailey fell short of one. *See Varner v. District of Columbia*, 891 A.2d 260, 270 (D.C. 2006) (conclusory assertion by expert witness is "insufficient to establish an objective standard of care"). As a result, Hanna's opinion is not clear and convincing evidence that Bailey violated either provision of Rule 1.1.

## B. Rule 1.4(a) and 1.4(b)

We agree with the Board's conclusion that clear and convincing evidence established that Bailey violated Rules 1.4(a) and 1.4(b). Rule 1.4(a) requires that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Under Rule 1.4(b), "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions." Rule 1.4(b) applies to both substantive legal issues and the financial agreement between attorney and client. *See In re Gonzalez*, Board Docket No. 17-BD-071 (BPR Oct. 24, 2018), *recommendation adopted where no exceptions filed*, 207 A.3d 170 (D.C. 2019). Both sections impose a responsibility on the lawyer not only to respond to communications from clients, but also to initiate communications when appropriate. *See In re Hallmark*, 831 A.2d 366, 374 (D.C. 2003) (citing Rule 1.4, cmt. [1]). In evaluating Rule 1.4 violations, we ask whether

the attorney satisfied his client's reasonable expectations for information. *See In re Schoeneman*, 777 A.2d 259, 264 (D.C. 2001) (citing Rule 1.4, cmt. [3]).

The evidence established that Bailey violated Rule 1.4(a) when he failed to respond to Laster's attempts to determine the status of his OHR claim. Bailey contends that both the factual allegations against him and the standard of care required to avoid a 1.4(a) violation were insufficiently specific.[3] We disagree. The Hearing Committee credited Laster's testimony that "Attorney Stewart and Attorney Bailey wasn't [sic] responding to my emails or my phone calls in a responsible way" and that he called them many times in hopes of learning the outcome of his OHR matter. The fact that the Hearing Committee did not attribute a particular date to each of Laster's entreaties for information is of no import. Bailey appears to argue that he did follow up with OHR once, and that this one communication satisfied his obligation under 1.4(a). But this argument intimates that any subsequent requests for information from Laster were somehow unreasonable and undeserving of attention—a suggestion that is anathema to an attorney's professional obligations.

---

[3] Bailey also makes an unpersuasive argument that he was somehow excused from his ethical obligations as counsel because Laster "enjoyed a trusted relationship with the OHR staff" and was, therefore, "never wanting for information about the status of the OHR matter." Even if Laster had another means of accessing information that he should have been able to get through his counsel, that would have no bearing on Bailey's responsibility to respond to his client.

Because Bailey did not satisfy his client's reasonable expectations for information, *see In re Schoeneman*, 777 A.2d at 264, we conclude that Disciplinary Counsel supported the Rule 1.4(a) charge with clear and convincing evidence.

We also conclude that Rule 1.4(b) required Bailey to explain both the scope of the legal services he would provide and the fees that Laster could expect to incur. Bailey did neither. In his brief, Bailey quotes large swaths of Laster's testimony to suggest that Laster sufficiently understood the fee agreement because he attempted to negotiate it. Not so. In fact, Laster explained that "there [were] a lot of words that [he] did not understand," and that he was told that Bailey "would go over the agreement" with him, "but that didn't come about at all." Moreover, the fee agreement contains internally contradictory provisions, which makes it impossible to "understand," absent clarification. Laster's attempt to negotiate with Bailey over what he believed to be the terms of the agreement does not require us to conclude that Laster fully comprehended, or that Bailey explained, the inherently unclear fee agreement.

## C. Rule 1.5(a)

The evidence also established, as the Board found, that Bailey violated Rule 1.5(a), which requires that a lawyer's fee be reasonable, and further enumerates the

factors bearing on a fee's reasonableness. An attorney can charge an unreasonable fee in two ways: by overcharging for work done, and by charging for work not completed. *In re Cleaver-Bascombe*, 892 A.2d 396, 403 (D.C. 2006). It is of no moment whether the fee was actually collected or merely billed to the client. *Id.*

Simply put, Bailey billed Laster for work he could not have completed as recorded, and "[i]t cannot be reasonable to demand payment for work that an attorney has not in fact done." *Id.* at 403. Disciplinary Counsel's forensic accountant, O'Connell, highlighted several instances of double billing and erroneous overcharges, totaling at least $12,618.17 claimed by Bailey alone. Two particularly egregious, and ultimately dispositive, instances are those on which Bailey claimed to have worked on submissions after they had been submitted and attempted to charge Laster for that post-submission work. Bailey was unable to explain the obvious impossibility that he completed that work as billed. That conduct alone supports a finding that Bailey violated 1.5(a).

In response to the Board's Report, Bailey concedes that there were "errors in addition" on the invoice, but contends that they do not amount to "intentional over billing." Even if true that Bailey did not intend to defraud Laster, we are unaware of a requirement that Disciplinary Counsel show that an attorney intended to defraud

his client to support a Rule 1.5(a) violation. *See In re Tun*, 26 A.3d 313, 314-15 (D.C. 2011) (noting that a 1.5(a) violation as a result of "abysmal" recordkeeping, as opposed to intentional fraud, may warrant a "relatively short suspension," but acknowledging that abysmal recordkeeping constitutes a 1.5(a) violation nonetheless). The extent of Bailey's overbilling suggests that he was, at the very least, negligent.[4] The Hearing Committee found that Bailey engaged in "sloppy and unprofessional billing practices," and that Laster was, in total, overbilled to the tune of $23,000. The Attorney/Client Arbitration Board finding that Laster only owed Bailey $16,500 in addition to the $12,300 he had already paid supports the view that Laster was egregiously overbilled. Repeatedly charging a client for work not performed is clearly unreasonable.

---

[4] There is an argument that overbilling might in some circumstances be deemed a species of misappropriation, so that where such billing is reckless or intentional, disbarment should be the presumptive sanction. *See In re Moawad*, 268 A.3d 820, 821 (D.C. 2022) ("[W]e have limited the sanction of presumptive disbarment to cases involving reckless or intentional misappropriation and the conviction of crimes of moral turpitude."). We have previously highlighted the open question of whether and when overbilling a client might be deemed a misappropriation of entrusted funds. *See In re Schuman*, 251 A.3d 1044, 1051-52 & n.4 (D.C. 2021) ("[W]e are unaware of any case where we have held that double billing or overbilling cannot amount to misappropriation, at least not as a categorical matter."). But here, Disciplinary Counsel sought to prove only that the overbilling was "unreasonable" or negligent so as to constitute a violation of Rule 1.5(a), and negligent misappropriation does not trigger the presumption of disbarment. *In re Moawad*, 268 A.3d at 821. Whether Bailey's overbilling might be deemed misappropriation or its equivalent—a point Disciplinary Counsel does not press—is thus immaterial to our determination of the appropriate sanction here.

## D. Rule 1.5(e)

The Board correctly concluded that Baily violated Rule 1.5(e), which requires that the attorney advise the client, "in writing, of the identity of the lawyers who will participate in the representation, of the contemplated division of responsibility, and of the effect of the association of lawyers outside the firm on the fee to be charged." Although the fee agreement did disclose that Bailey intended to associate with Stewart as co-counsel, the agreement was devoid of any mention of division of responsibility.[5]  Disciplinary Counsel was required to prove no more, and Bailey's argument regarding the policy risk of discouraging attorneys from obtaining co-counsel with relevant expertise does not move the needle.

## E. Rule 8.4(c)

As the Board found, the evidence also established that Bailey violated Rule 8.4(c), which prohibits attorneys from "[e]ngag[ing] in conduct involving

---

[5] While the agreement did explain that "[i]f associated counsel is retained no additional costs will be required of Client," that promise is both ambiguous and seemingly contrary to the eventual invoice, which included double billing for instances like both attorneys' attendance at meetings.  Because we think 1.5(e) was violated on other sufficient grounds, we do not need to wade into an interpretation of this clause of the fee agreement.

dishonesty, fraud, deceit, or misrepresentation." Even if an attorney's conduct does not fall within legal definitions of fraud or misrepresentation, it can still be considered dishonest for the purposes of Rule 8.4(c). *In re Romansky*, 825 A.2d 311, 315 (D.C. 2003) ("[W]hat may not legally be characterized as an act of fraud, deceit or misrepresentation may still evince dishonesty." (quoting *In re Shorter*, 570 A.2d 760, 768 (D.C. 1990))). That is because "while an intent to defraud or deceive may be required for a finding of fraud, dishonesty may result from conduct evincing a lack of honesty, probity or integrity in principle." *Id.* (citation omitted). Disciplinary Counsel thus does not need to prove that the attorney had a deceptive or fraudulent intent to substantiate a Rule 8.4(c) violation, it suffices if the dishonest act itself was intentional. *Id.* Based on the Hearing Committee's well-supported factual findings that Bailey and Stewart overbilled Laster approximately $23,000 and that Bailey was dishonest "in generating and charging for false billing entries," we conclude that Bailey violated Rule 8.4(c).

## F. Rule 8.4(d)

The Board concluded that Bailey did not violate Rule 8.4(d), which prohibits attorneys from "[e]ngag[ing] in conduct that seriously interferes with the administration of justice." An attorney can violate Rule 8.4(d) by failing to respond

to Disciplinary Counsel's inquiries. Rule 8.4, cmt. [2]. Disciplinary Counsel must demonstrate that Bailey's conduct: (i) was improper; (ii) bore directly upon the judicial process; and (iii) tainted the judicial process in more than a de minimis way. *In re Hopkins*, 677 A.2d 55, 60-61 (D.C. 1996).

Here, in October 2015, Disciplinary Counsel subpoenaed Bailey for "all documents relating to Allen Laster . . . including, but not limited to, retainer agreements(s), bills, [and] invoices." Bailey's retained counsel produced a set of documents shortly thereafter, but it was incomplete. Disciplinary Counsel followed up in a letter two years later, requesting materials that were omitted in Bailey's earlier disclosures, including any time records that supported the billing statements Bailey sent to Laster. Neither Bailey nor his counsel responded to Disciplinary Counsel's follow-up request until the February 2019 hearing, ultimately producing over 1,000 more pages of documents. The Hearing Committee did not credit Bailey's testimony that he had not seen the subpoena and was unaware of its scope, and Bailey acknowledged that he had seen the follow-up letter seeking production of missing documents, yet never received any assurances from his counsel that those materials had been turned over.

As a result of the "aggravated nature" of Bailey's failure to respond, the Hearing Committee concluded "that the improper conduct tainted the disciplinary process in more than a de minimis way." The Board, however, felt that the Hearing Committee inappropriately assigned the blame for Bailey's counsel's failings to Bailey, when "Disciplinary Counsel did not establish that Respondent was responsible for or aware of the failure to completely respond to Disciplinary Counsel's inquiries or subpoenas." The Board analogized to its holding in *In re Krame*, Board Docket No. 16-BD-014 (BPR July 31, 2019), *review pending*, D.C. App. No. 19-BG-0674, that a disciplinary respondent is not responsible for false statements included in a brief by his counsel. The Board opined that, like in *In re Krame*, Disciplinary Counsel would need to prove that Bailey somehow endorsed or was aware of the misconduct before it would conclude that he violated Rule 8.4(d).

We disagree with the Board's reasoning and conclude that the record establishes that Bailey violated Rule 8.4(d). The Board's analogy to *In re Krame* is unconvincing. It is generally fair to say, as the Board reasoned in *In re Krame*, that a client is not responsible for false statements included in a brief filed by counsel on his behalf—at least absent some evidence that the client is aware of the statement's inclusion in the brief—even if that client is also an attorney. Drafting an appellate brief is clearly within the purview of counsel, and in *In re Krame* the Board noted

that there was no indication that respondent was aware of the false statement's inclusion in the brief. This case is quite different. Not only was the initial subpoena directed at Bailey personally, but Bailey was then informed by a follow-up letter that he had failed to comply with it. At that point, the analogy to *In re Krame* falls apart, because Bailey was made aware of his failures to comply with the initial subpoena and took no meaningful steps to personally remediate that failure or to ensure that his attorney did so. This is more akin to a client who is aware of a false statement in a brief drafted by his attorney and who nonetheless takes no steps to correct it, a failure that could likewise be fairly attributed to the client. Bailey was on notice of his failure to comply with the subpoena and, at that point, any blanket reliance on his counsel to fix the issue was misplaced. As an attorney, he had a duty to take reasonable steps to ensure that the initial omissions were corrected. He failed to do that, and so we conclude that he violated Rule 8.4(d).

## G. Sanction

Having concluded that Bailey violated Rules 1.4(a), 1.4(b), 1.5(a), 1.5(e), 8.4(c), and 8.4(d), we now turn to determining the appropriate sanction. The Hearing Committee recommended a one-year suspension plus a fitness requirement and restitution, but the Board recommended only the year's suspension, without a fitness

requirement or restitution. In its brief, Disciplinary Counsel maintains that Bailey's sanction should include a fitness requirement (though it abandons any request for restitution). While we ordinarily adopt the Board's recommended sanction so long as it falls within the wide range of acceptable outcomes, "we will not do so if such deference is 'unwarranted.'" *In re Szymkowicz*, 195 A.3d 785, 791 (D.C. 2018) (quoting D.C. Bar R. XI, § 9(h)(1)). The usual deference is not warranted here because we have concluded, contrary to the Board's view, that Bailey violated Rule 8.4(d). *See In re Ekekwe-Kauffman*, 210 A.3d 775, 797 (D.C. 2019) (giving the Board's recommended sanction "no deference" where we disagreed with its assessment of a violation underpinning its recommendation). We thus "conduct a new analysis of the appropriate sanction," *id.*, and in doing so we examine cases in which attorneys were disciplined for a similar constellation of misconduct and seek to avoid doling out "inconsistent dispositions for comparable conduct." D.C. Bar Rule XI, § 9(h)(1).

We turn first to the length of suspension and look to several factors including: "(1) the seriousness of the conduct, (2) prejudice to the client, (3) whether the conduct involved dishonesty, (4) violation of other disciplinary rules, (5) the attorney's disciplinary history, (6) whether the attorney has acknowledged his or her wrongful conduct, and (7) mitigating circumstances." *In re Martin*, 67 A.3d 1032,

1053 (D.C. 2014) (citing *In re Elgin*, 918 A.2d 362, 376 (D.C. 2007)). We agree with the Board's assessment that "the main thrust of the seriousness of the misconduct and prejudice to the client was [Bailey's] overbilling of thousands of dollars, his false billing entries, and his misleading terms in the Representation Agreement." Bailey violated many rules over the course of Laster's representation, one of which was 8.4(c), which prohibits dishonesty. Moreover, this is not Bailey's first brush with the disciplinary system. Bailey was previously suspended for nine months, *see In re Bailey*, 883 A.2d 106, 123 (D.C. 2005), and has received two Informal Admonitions, *see In re Bailey*, Bar Docket No. 2005-D136 (Letter of Informal Admonition Aug. 4, 2007); *In re Bailey*, Bar Docket No. 495-97 (Letter of Informal Admonition Feb. 6, 2004). That these earlier disciplinary actions appear to have made so little an impression on Bailey is concerning. Finally, and perhaps most glaringly, Bailey has downplayed and refused to accept responsibility for the ways in which he failed Laster in the face of obvious evidence of his misconduct. As the Board concluded, Bailey's conduct most closely resembles the misconduct in *In re Ifill*, 878 A.2d 465 (D.C. 2005), where we suspended the attorney for one year after he failed to pursue a matter and the client's lawful objectives appropriately, failed to keep the client reasonably informed, charged an unreasonable fee, and was dishonest with both his client and Disciplinary Counsel, *id.* at 470, 475-76.

Next, we consider the Board's conclusion that the record does not contain clear and convincing evidence that a fitness requirement is appropriate. In order to impose a fitness requirement, which is a burdensome and lengthy undertaking for an attorney, "the record in the disciplinary proceeding must contain clear and convincing evidence that casts a serious doubt upon the attorney's continuing fitness to practice law." *Cater*, 887 A.2d at 6. We consider: "(1) the nature and circumstances of the misconduct; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law." *In re Roundtree*, 503 A.2d 1215, 1217 (D.C. 1985).

The Board asserted that these factors do not support a fitness requirement. We disagree. Considering each of the *Roundtree* factors, we conclude that Bailey's misconduct is sufficiently serious to cast doubt upon his continuing fitness to practice law, so that we condition his reinstatement upon proof of his fitness to resume legal practice. For instance, Bailey's delayed and incomplete compliance with the subpoena suggests that he did not appreciate the seriousness of his misconduct or take steps to correct the harm. And "the nature and circumstances of

the misconduct" involved repeated and compounding breaches of professional ethics, rather than an isolated lapse in judgment. Accordingly, it is

ORDERED that Samuel Bailey, Jr., is suspended from the practice of law in the District of Columbia for a period of twelve months. His reinstatement is conditioned on him making a satisfactory showing that he is fit to practice law in the District of Columbia. We further direct Bailey's attention to the requirements of D.C. Bar R. XI, § 14, and their effect on his eligibility for reinstatement. *See* D.C. Bar R. XI, § 16(c).